STATE of Minnesota,
petitioner, Respondent,

v.

Dennis HINKEL, Appellant.

No. CX–83–2059.

Supreme Court of Minnesota.

April 12, 1985.

Hubert H. Humphrey, III, Atty. Gen., Thomas J. Foley, Ramsey, Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

C. Paul Jones, Public Defender, Renee J. Bergeron, Asst. Public Defender, Minneapolis, for respondent.

YETKA, Justice.

This case comes to this court on a petition for further review of the Court of Appeals' decision overturning the defendant's conviction for possession of controlled substances. 353 N.W.2d 617. At the omnibus hearing on August 16, 1983, the defendant's motion to suppress evidence seized in a search of his person was denied. His right to a jury trial was waived and, on stipulated facts, the defendant was convicted. On appeal, the defendant's conviction was reversed on the ground that the search of his person was pursuant to an illegal search warrant and was overly intrusive to be a simple search for weapons. The state petitioned this court for further review. We reverse the court of appeals and uphold the conviction.

Police suspicions about 162 North Kent were prompted by numerous citizens' complaints about "afterhours activity." Police officers observed the residence late at night and found an unusual amount of activity. Shortly before seeking the search warrant, a "confidential, reliable informant" entered the premises after the legal closing hours of bars and purchased a bottle of vodka and a bottle of gin. No liquor license had ever been issued for the property.

The St. Paul Police went to the Ramsey County Municipal Court with their information and obtained a search warrant. The warrant stated that:

Intoxicating liquor, wine, non-intoxicating malt beverages, paraphenalia [sic] for the dispensing of same, and all other equipment associated with the sale, storage and/or consumption of liquor; playing cards, dice, gambling devices; receipts, inventories, bills or other papers pertaining to the premises at 162 N. Kent Street, St. Paul, Minnesota; weapons or guns, drugs covered under the controlled substance law and paraphenalia [sic] used for the distribution of same; and all other contraband

could be found at "162 N. Kent St., St. Paul, Minnesota." A search of the house and "all persons on the premises" was authorized. Nighttime search was authorized since "illegal activities take place during the night time [sic] as the nature of the business is that commonly referred to as an 'after hours joint'." Unannounced entry was authorized since attempts are "inevitably made to destroy evidence when the presence of the police is known" at afterhours establishments.

On May 28, 1983, at approximately 1:00 a.m., the officers entered the residence and lined all present against the walls. Half-pint liquor bottles, beer cans, controlled substances, dice, dominoes, and two weapons littered the rooms.

One of the officers searching the house, Officer McNeely, walked into the dining room from the living room. Another officer was searching the occupants of the dining room. The defendant still had his hands against the wall. McNeely asked the defendant if he had been searched. The defendant said he had. The other officer overheard and replied that the defendant had not been searched. McNeely proceeded to search the defendant.

While doing a pat-down search, McNeely ran his thumbs along the defendant's waistband. He felt an object which he admitted did not feel like a weapon, but which he thought was contraband. McNeely pulled it out and found five packets of white powder wrapped in tin foil which was determined to be cocaine.

The issue presented on this appeal is whether the defendant could lawfully be searched under a warrant authorizing the

search of "all persons on the premises" of an "afterhours joint."

Under Minnesota law, a search warrant may be issued only upon "probable cause, supported by affidavit, naming or describing the person, and particularly describing the property or thing to be seized, and particularly describing the place to be searched." Minn.Stat. § 626.08 (1984); *see* Minn.Const. art. I, § 10. The warrant in this case authorized not only search of the premises, but also search of "all persons on the premises."

■ Although they have been upheld, general "all persons" search warrants can easily be misused for overbroad searches. *See, e.g., Commonwealth v. Smith,* 370 Mass. 335, 348 N.E.2d 101, *cert. denied,* 429 U.S. 944, 97 S.Ct. 364, 50 L.Ed.2d 314 (1976); *State v. De Simone,* 60 N.J. 319, 288 A.2d 849 (1972). In upholding an "all persons" search warrant, Chief Justice Weintraub noted:

> A showing that lottery slips are sold in a department store or an industrial plant obviously would not justify a warrant to search every person on the premises, for there would be no probable cause to believe that everyone there was participating in the illegal operation. On the other hand, a showing that a dice game is operated in a manhole or in a barn should suffice, for the reason that the place is so limited and the illegal operation so overt that it is likely that everyone present is a party to the offense.

*Id.* at 321–22, 288 A.2d at 850. There must be a sufficient nexus between the criminal activity, the place of the activity, and the persons in the place to show probable cause. This nexus has been described as

> whether there is sufficient particularity in the probable cause sense, that is, whether the information supplied the magistrate supports the conclusion that it is probable anyone in the described place when the warrant is executed is involved in the criminal activity in such a way as to have evidence thereof on his person.

2 W. LaFave, Search and Seizure § 4.5, at 92 (1978).

■ In the present case, the police were dealing with illegal afterhours activity in a house. The hour was late; the illegal activities carried on throughout the house. There was little likelihood that anyone would be in the house but to participate in the afterhours revelry. It is unreasonable to expect the officers to name in the warrant the people to be searched in such a place because the customers could vary from day to day or, indeed, from hour to hour. Thus, a warrant requesting the right to search everyone in the place was valid.

This case is in contrast to the situation in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra,* an Illinois statute allowed the search of all persons found on a premises to be searched pursuant to a warrant. On a warrant obtained to search a bartender and a licensed bar during operating hours, the United States Supreme Court held a search of all customers to be unconstitutionally overbroad. The police had no probable cause to believe that all patrons of a legally operating bar were involved in any criminal activity. In this case, however, there was little chance that any patron of the illegal afterhours joint was not participating in its illegal activities.

■ Although neither party has adequately addressed the issue and the court of appeals also failed to mention it, it appears that the search could have been justified as incident to a lawful arrest. St. Paul Legislative Code § 271.01 (1983) defines a disorderly house as any house where liquor or drugs are illegally sold or where gambling illegally takes place. Knowing presence in a disorderly house is a violation of the ordinance, *id.* at § 273.03, which section 1.05 makes a misdemeanor. Presence within the house when the officers entered constituted the commission of a misdemeanor in the presence of an officer, thus giving the officer authority to arrest without a warrant. Minn.Stat. § 629.34, subd. 1(1) (1984). It appears that the officers could well have arrested

Hinkel for violation of the ordinances and, thus, the search was incident to that arrest.

The court of appeals is reversed and the conviction upheld.