**STATE of Minnesota, Appellant,**

v.

**Jesse Isaac BIGELOW, Respondent.**

**No. C4–89–1048.**

Court of Appeals of Minnesota.

Nov. 21, 1989.

Review Granted Jan. 12, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Marvin E. Ketola, Carlton, for appellant.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, Harry L. Newby, Jr., Cloquet, for respondent.

Heard, considered and decided by FORSBERG, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

FORSBERG, Judge.

Respondent Jesse Isaac Bigelow was arrested for felony possession of a controlled substance. A quantity of marijuana was found in Bigelow's luggage after the vehicle he was a passenger in was stopped for a speeding violation. The trial court found the search of Bigelow and his luggage was conducted without sufficient probable cause, and suppressed the evidence found therein. The State of Minnesota appeals. We affirm.

## FACTS

Around sunset on March 31, 1988, Minnesota Highway Patrol Officer Harvey Genadek observed a Camaro traveling north at 72 miles-per-hour in a 65 mile-per-hour zone of Interstate 35. There had been no erratic driving. According to Genadek, the car took 1/6 of a mile to stop after he turned on his flashers, a distance he believed was excessive. He observed a passenger in the front seat reaching down as if to hide something under the front seat. As he approached the car, Genadek noted that in addition to the driver, Paul Pulte, and front seat passenger, Timothy Johnson, there was a third person, Jesse Bigelow, in the rear seat. Genadek did not observe any furtive gestures on Bigelow's part.

Genadek informed Pulte that he was speeding and obtained his driver's license. Genadek then shined his flashlight into the front seat area from the driver's side. He suspected drinking and asked to inspect a mug in plain view. The mug had only dried residue from root beer in it. He did not see any other evidence of drinking or illegal activity. Genadek then opened the car door and asked Pulte to get out and stand by the patrol car. No odor of alcohol was noted on Pulte.

Genadek went to the right side of the vehicle to look for evidence of alcohol. On the floor of the front seat, he saw a purple colored glass pipe partially covered by a pair of boots. Genadek recognized the pipe as a "bong," used for smoking marijuana. He ordered Johnson to give it to him.

Johnson told Genadek the pipe belonged to someone in Duluth. Genadek returned to his vehicle and radioed for other patrol officers to come to the scene.

After 4–5 minutes, another unit arrived. Johnson informed the officers he was the owner of the car. He was ordered out of the car, pat-searched, and informed the car would be searched because drug paraphernalia was found in it. Along the passenger side of the front seat console, Genadek found a small bag of marijuana.

Bigelow was ordered out of the rear seat and was pat-searched. Nothing was found as a result of this search. By this time, a third trooper had arrived on the scene. Pulte and Johnson were handcuffed.

The officers found some backpacks or duffel bags on the floor area of the back seat. They first opened a bag identified to them as belonging to Johnson and found nothing other than clothes and personal articles. The officers then unzipped a bag Bigelow identified as his before it was opened. Inside a plastic bag was found containing what was later determined to be 122.5 grams (4.375 ounces) of marijuana. In a third bag, they found a balance beam scale. The officer testified he recognized the scale as being the type used to weigh marijuana. Bigelow was then handcuffed and all three men were taken to the Carlton County Jail.

Bigelow challenged the validity of the search of his duffel bag. An omnibus hearing was held at which Genadek testified as to the circumstances of the stop and search. The court issued an order suppressing the marijuana found in the backpack as the product of a warrantless search, impermissible under the fourth amendment. The court held the officer had no probable cause to believe that Bigelow was involved in any illegal activity or that his duffel bag contained any contraband.

## ISSUE

Did the trial court err in suppressing the evidence?

## ANALYSIS

On review, this court will reverse a pretrial order only if the state shows clearly and unequivocally that the trial court erred, and that the error will have a critical impact on the outcome of the trial. *State v. Webber,* 262 N.W.2d 157, 159 (Minn. 1977). Bigelow does not challenge the state's assertion that this case meets the *Webber* critical impact standard.

The state argues suppression of the contested evidence was error under *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). *Ross* authorizes the warrantless search of a vehicle as thorough as a magistrate could authorize by warrant. *Id.* at 825, 102 S.Ct. at 2173.

The trial court in this case distinguished *Ross* on the facts. In *Ross* there had been a tip by a previously reliable informant indicating a drug sale had just been made out of a parked vehicle. The party making the sale was specifically identified and previously known by the police to be a drug dealer. He was also the owner, driver, and only occupant of the vehicle. Under those facts, there was clear probable cause for the stop and search of the vehicle.

Here, Bigelow was neither driver nor owner of the vehicle. He exhibited no suspicious behavior or furtive moves. He did not smell of marijuana or alcohol and was seated in an area separate from where the paraphernalia was found. The search of his bag took place outside the vehicle and in no way involved the operation of the vehicle.

We agree with the trial court that *Ross* does not apply here. While there may have been probable cause to stop the vehicle, it did not extend to a search of Bigelow and his private luggage. In Minnesota, "[a] person cannot be arrested and searched merely because he is found in suspicious circumstances." *State v. Clark,* 312 Minn. 44, 49, 250 N.W.2d 199, 202 (1977) (footnote omitted). This "mere presence" rule has been applied to searches of passengers in vehicles:

> The officers did not have probable cause to believe that [defendant] was guilty of constructive possession of marijuana,

and they could not justify arresting or searching him as an incident thereof on the basis of his mere presence in the vehicle.

*State v. Slifka,* 256 N.W.2d 90, 91 (Minn. 1977).

In *State v. Albino,* 384 N.W.2d 525 (Minn.Ct.App.1986), a passenger in a legally stopped vehicle challenged the legality of her arrest and search. The police justified the search by attributing constructive possession of marijuana found in a camera case in the vehicle to her. In reversing the conviction, this court found no probable cause. Therefore, the search of her person and handbag was not allowed. In reaching this conclusion, this court observed:

> She did not flee the scene, she was never observed making any furtive movements or trying to hide the camera case [in which drugs were found], nor did she claim any ownership or control over the vehicle. * * * Finally, the drugs were in a closed [camera] case. Under these facts, the police officers had no probable cause to believe that Albino was in constructive possession of the drugs found in the camera case.

*Id.* at 528.

■ The state argues once a valid stop is made and probable cause is established, a complete and thorough search of the vehicle is permitted. We believe, however, unless the evidence giving rise to probable cause can be directly or constructively attributed to a passenger, or unless independent grounds for probable cause exist, a search of the passenger and his luggage is illegal. The inquiry thus properly focuses on the individual, not the vehicle.

We believe where there is no probable cause for a search of a passenger and his luggage, such a search may only be conducted where an "all persons" warrant would properly issue. *Id.* at 527–28 n. 1. An "all persons" warrant is justified only in certain specific circumstances in Minnesota.

> Although they have been upheld, general "all persons" search warrant can easily be misused for overbroad searches. * * * There must be a suffi-

cient nexus between the criminal activity, the place of the activity, and the persons in the place to show probable cause.

*State v. Hinkel,* 365 N.W.2d 774, 776 (Minn.1985).

In *Hinkel,* a search was made of an after-hours house at approximately 3:00 a.m. In upholding the validity of the search, the court reasoned:

> The hour was late; the illegal activities carried on throughout the house. There was little likelihood that anyone would be in the house but to participate in the afterhours revelry. It is unreasonable to expect the officers to name in the warrant the people to be searched in such a place because the customers could vary from day to day or, indeed, from hour to hour. Thus, a warrant requesting a right to search everyone in the place was valid.

*Id.* The court contrasted this situation in *Hinkel* with that in *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), where an "all persons" warrant executed at a bar during regular business hours was held to be unconstitutional.

■ The question is whether a sufficient nexus exists between the automobile, the passenger, and the activity for which a warrant would have been issued. No nexus exists in this case. The marijuana was found in Bigelow's luggage, not in the auto itself. There was no direct connection between the auto and Bigelow's possession of marijuana. Missing is the kind of indicia of criminal activity of all persons present as was the case with the after-hours bar in *Hinkel.* Bigelow's presence in a non-stolen, properly registered automobile on a public road fails to provide the necessary nexus to support the probable cause to justify a warrant for search of his person or luggage.

## DECISION

The trial court's order suppressing the evidence is affirmed.

Affirmed.

KALITOWSKI, Judge, dissenting.

I respectfully dissent. I believe the trial court erred in holding the police did not have probable cause to search appellant's duffel bag.

I believe this case is controlled by *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. The applicability of *Ross* to the facts of this case is underscored by the Supreme Court's description of *Ross:*

> In this case we consider the extent to which police officers—who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it—may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view.

*Id.* at 800, 102 S.Ct. at 2160.

Here, the police, having discovered drug paraphernalia and drugs in the vehicle pursuant to a legitimate stop, had probable cause to search the vehicle. Under *Ross,* "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of its search." *Id.* at 825, 102 S.Ct. at 2173.

In finding no probable cause to search appellant's duffel bag, the trial court in effect held that the police were required to allow appellant to take whatever containers he alleged belonged to him and leave the scene of the stop. I believe this result is in direct contradiction to *Ross.*

Further, I do not believe this case should be controlled by *State v. Albino,* 384 N.W.2d 525 (Minn.Ct.App.1986). In *Albino* the issue was whether the police had probable cause to *arrest* a passenger in the motor vehicle. Here, the issue is whether the police having found drugs in a vehicle had probable cause to search all the containers in the vehicle including a duffel bag which belonged to appellant.