STATE of Iowa, Appellee,

v.

**Annette THOMAS, Appellant.**

No. 94–1765.

Supreme Court of Iowa.

Nov. 22, 1995.

Steven A. Berger of Wehr, Berger, Lane & Stevens, Davenport, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, William E. Davis, County Attorney, and Kelly G. Raines, Assistant County Attorney, for appellee.

SNELL, Justice.

Appellant, Annette Thomas, appeals from the district court's denial of her motion to suppress evidence obtained during a search based on a search warrant and review of the sentence imposed by the district court following her conviction for possession of a controlled substance with intent to deliver. Because we overturn the district court's denial of the motion to suppress, we need not reach the issue of sentencing.

## I. Factual and Procedural Background

In the spring of 1992, and again in the fall of 1993, the Scott County Drug Task Force undertook sting operations focusing on narcotics sales being conducted at a Davenport tavern known as "The Bar." The operations resulted in more than thirty arrests for delivery of crack cocaine and for solicitation to deliver crack cocaine during the summer of 1992 and in September of 1993. These initial operations focused on the foot traffic entering and leaving The Bar with the subjects being found to have been constantly entering and leaving The Bar.

When the second operation concluded and the weather became somewhat colder, it became clear the subjects of the investigation were no longer congregating outside The Bar, but were going inside. For this reason, in January of 1994, the police department began using confidential informants and uniformed officers resulting in eight controlled buys of crack cocaine. These buys were made from eight different individuals, five of whom were identifiable. The buys occurred on four separate occasions with the last purchase taking place on February 1, 1994. All but one of the identified individuals have criminal histories relating to controlled substances.

On February 2, 1994, Detective Douglas Devine of the Davenport Police Department signed an application for a search warrant to search The Bar. In the application, he described the location of The Bar by its street address and the floor it occupies in the building. He requested to search, "All persons located inside the premises identified as the location to be searched, including persons on the premises at the time the warrant is signed, and departing thereafter." In an attachment to the application, the officer summarized the ongoing investigation and its results, including the thirty arrests and eight controlled buys. He also named the identified individuals who were arrested as a result of the controlled buys, as well as their criminal drug histories. He also stated he had

observed many individuals in The Bar carrying crack cocaine and that many of the sales transactions take place in public view of the other Bar customers. He made no statements regarding ever having seen weapons on the premises. He then stated that during the time he spent in The Bar, "a vast majority of the persons on the premises are either selling or holding crack cocaine at any time," and he believed that "all of the people present on the premises at any time, are probably in possession of either weapons or controlled substances."

The warrant was issued on February 2, 1994, a Wednesday, at 1:30 p.m. The warrant described The Bar only by its street address and main floor location and authorized the search of "All persons located inside the premises identified as the location to be searched, including persons on the premises at the time the warrant is signed, and departing thereafter." Police did not execute the warrant until approximately 6:30 p.m. on Thursday, February 3, 1994.

When police executed the warrant, everyone inside The Bar was seized, handcuffed, and searched. When police entered, Annette Thomas, the appellant, was seated beside Melvin Harris, one of the known drug dealers named in the warrant application. Thomas was never personally named in the warrant application. Upon searching Thomas, a Davenport police officer confiscated a plastic bag containing approximately 3.2 grams of crack cocaine which Thomas had in her pants.

On March 7, 1994, the assistant county attorney filed a Trial Information charging Thomas with possession with intent to deliver a schedule II controlled substance and violation of the Iowa drug tax act. *See* Iowa Code §§ 124.206, 124.401(1)(c)(3), ch. 453B (1993). Thomas was arraigned on July 25, 1994 and filed a motion to suppress evidence resulting from the warranted search on July 27, 1994. The motion argued the warrant was overbroad and not timely executed in violation of the Fourth Amendment of the United States Constitution and Article 1 section 8 of the Iowa Constitution. Argument on the motion was held on August 10, 1994,

and on August 19, 1994, Judge David Schoenthaler filed an order denying it.

Thomas' jury trial began on October 3, 1994. Following the State's case, Judge Schoenthaler sustained Thomas' motion for a directed verdict as to the tax stamp violation. The jury later returned a verdict of guilty for possession with intent to deliver. On October 21, 1994, Thomas was sentenced to a term not to exceed ten years and a fine of $1000. Thomas appeals arguing the district court erred in permitting testimony outside the four corners of the warrant application at the suppression hearing, and that the warrant was an illegal overbroad general warrant in violation of the Fourth Amendment.

## II. Standard of Review

Because Thomas challenges the validity of the search warrant on constitutional grounds, our standard of review is de novo. *State v. Todd,* 468 N.W.2d 462, 466 (Iowa 1991); *State v. Weir,* 414 N.W.2d 327, 329 (Iowa 1987).

## III. Validity of the Search Warrant

Thomas first raises the argument the district court judge acted improperly at the suppression hearing by considering additional testimony outside that contained in the affidavits presented in the warrant application. It is clear from the record in this case the district court judge did in fact consider the testimony of officer Devine in reaching his decision, as he states in his order denying suppression that the "all persons" language is proper when "supported by the narcotics officer's knowledge that drugs are easily concealed and the dealers often have their girlfriends hold drugs for them," and that "a search of only the known drug dealers could be easily frustrated since dealers often have their girlfriends hold their drugs for them." None of this information is present in Devine's affidavit attached to the warrant application—it was only presented in Devine's testimony at the suppression hearing.

It is well established in Iowa jurisprudence that the issuance of a search warrant is to be "tested entirely by the recitals in affidavits and the magistrate's abstracts of

oral testimony endorsed on the application. No other evidence bearing on the issue should be received in a suppression hearing." *State v. Liesche,* 228 N.W.2d 44, 48 (Iowa 1975); *see also State v. Seager,* 341 N.W.2d 420, 426 (Iowa 1983); *State v. Easter,* 241 N.W.2d 885, 886 (Iowa 1976). This court may not consider any other relevant information present in the record which was not presented to the neutral magistrate issuing the warrant. *Seager,* 341 N.W.2d at 426. A warrant whose affidavits and application are lacking as to the probable cause determination may not be "rehabilitated or fortified by later testimony." *State v. McManus,* 243 N.W.2d 575, 577 (Iowa 1976). Professor La-Fave has explained this as follows:

> [A]ny probable cause review in response to a motion to suppress must be made upon the basis of the information presented to the magistrate at the time the warrant was issued; a defective warrant cannot be resuscitated by consideration of additional information now available or even of information available when the warrant was obtained but which was not communicated to the magistrate.

1 Wayne R. LaFave, *Search and Seizure* § 3.1(d) (2d ed. 1987). The Iowa rule is analogous to Federal Rule of Criminal Procedure 41(c). *See United States v. Damitz,* 495 F.2d 50, 54 (9th Cir.1974); *United States v. Brouillette,* 478 F.2d 1171, 1176–77 (5th Cir. 1973); *United States v. Bolton,* 458 F.2d 377, 378 (9th Cir.1972).

Because there is no mention of the testimony that girlfriends of the drug dealers tend to hold drugs for the dealers or that the illegal drugs are small and easily concealed, we cannot therefore consider this in making our determination whether probable cause existed to support the scope of the warrant to search all persons present in The Bar.

■ The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This amendment was passed in response to the use of general warrants in England and writs of assistance used in the colonies. *See generally Stanford v. Texas,* 379 U.S. 476, 481–85, 85 S.Ct. 506, 509–12, 13 L.Ed.2d 431, 434–37 (1965). By requiring a warrant to particularly describe the persons or places to be searched and things to be seized, it forbids the use of general warrants. Under the Fourteenth Amendment due process clause, these protections are enforceable against the states as well as the federal government. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1083 (1961).

■ In order that the Fourth Amendment right of privacy from arbitrary police intrusion be left intact, nothing should be left to the discretion of the official executing the warrant. *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231, 237 (1927); *People v. Nieves,* 36 N.Y.2d 396, 369 N.Y.S.2d 50, 56, 330 N.E.2d 26, 31 (1975). The officer must be able to reasonably ascertain and identify the places and things authorized to be searched. *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925); *Nieves,* 369 N.Y.S.2d at 56, 330 N.E.2d at 31. This is not to mean that a hypertechnical, perfectly accurate description must be provided, rather, that the descriptions in the warrant and affidavits be "sufficiently definite to enable the searcher to identify the persons, places or things the magistrate has previously determined should be searched or seized." *Nieves,* 369 N.Y.S.2d at 56, 330 N.E.2d at 31; *see also United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684, 688 (1965).

■ In making our determination on the validity of the search warrant, we must also determine whether probable cause existed for the search of all persons present at The Bar. The facts and information presented to establish this finding need not rise to the level of absolute certainty, rather, it must supply sufficient facts to constitute a fair probability that contraband or evidence will be found on the person or in the place to be

searched. This court has phrased the inquiry as "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *Weir,* 414 N.W.2d at 330. In addition, the State is required to show by reasonable inference a nexus between the criminal activity, the things to be seized, and the place to be searched. *State v. Seager,* 341 N.W.2d 420, 427 (Iowa 1983); *State v. Leto,* 305 N.W.2d 482, 486 (Iowa 1981). This nexus may be established by consideration of the nature of the alleged crime and items to be seized, the defendant's opportunity to conceal the items, and any inferences as to where the items may be concealed. *State v. Groff,* 323 N.W.2d 204, 212 (Iowa 1982); *State v. Ballew,* 456 N.W.2d 230 (Iowa Ct.App.1990). In assessing these issues, we must examine the totality of the circumstances surrounding the issuance of the warrant. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 543 (1983). In determining whether a warrant is supported by probable cause and contains a sufficiently particular description of its target, the facts upon which we must focus are those presented to the magistrate upon application for the warrant—nothing more. *Seager,* 341 N.W.2d at 426.

In *Ybarra v. Illinois,* 444 U.S. 85, 88, 100 S.Ct. 338, 340, 62 L.Ed.2d 238, 243 (1979), the United States Supreme Court examined the validity of a warrantless search of a bar patron during execution of a valid warrant authorizing the search of a bar and a bartender. *Id.* at 88–89, 100 S.Ct. at 340–41, 62 L.Ed.2d at 243–45. Although this case is not completely analogous to the present case in that the warrant issued was not an "all persons" warrant, it is nonetheless instructive in that the Court analyzed whether there was in fact probable cause to support the (warrantless) search of the taverngoer. In holding there was not, the Court explained there was no reason for authorities to believe anyone but the bartender would be breaking the law. *Id.* at 90, 100 S.Ct. at 341–42, 62 L.Ed.2d at 244–45. The Court emphasized that even though police had a valid warrant to search the premises of the bar the defendant happened to be in, "a person's mere propinquity

to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245 (citing *Sibron v. New York,* 392 U.S. 40, 62–63, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917, 934 (1968)). The Court emphasized the importance of an individualized determination of probable cause:

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the "legitimate expectations of privacy" of persons, not places.

*Id.* at 91, 100 S.Ct. at 342, 62 L.Ed.2d at 245. In *Ybarra,* because the warrant application did not mention the defendant, nor did it even allege the bar was frequented by patrons who purchased illegal drugs, there was no probable cause on which to base a search of the defendant. *Id.* at 90, 100 S.Ct. at 342, 62 L.Ed.2d at 244–45.

With these general considerations in mind, we proceed to examine the warrant in this case. The Iowa courts have never been faced with the validity of an all persons warrant in this precise situation; however, the court has analyzed all persons warrants in several similar cases. In *State v. Jamison,* 482 N.W.2d 409, 411 (Iowa 1992), we examined the validity of a warrant authorizing the search of, among other things, "the person and vehicles of any other subjects at the residence after the signing of the search warrant." The warrant application contained sworn statements that the occupant of the residence to be searched had been previously arrested on drug charges, had been known to associate with drug dealers, and had been the subject of a controlled buy. *Id.* The application contained no assertions the defendant or his car had ever been seen on the premises before. *Id.* at 413. The defendant arrived at the residence in his automobile and was followed, stopped, and searched af-

ter leaving the home. *Id.* at 411. After considering the dangers of warrants authorizing the search of "all automobiles" present on the premises to be searched due to their inherent characteristic of portability and the lack of assurance the same vehicles will be present even a short time later, we struck down the warrant. *Id.* at 412. We held the warrant was lacking in probable cause under the Fourth and Fourteenth Amendments to the United States Constitution because there was no established nexus between the defendant or his automobile and the existence of criminal activity at the residence. *Id.* at 413.

In a similar case, *State v. Ballew,* 456 N.W.2d 230, 231–32 (Iowa Ct.App.1990), our court of appeals upheld a search warrant authorizing the search of a mobile home and "any vehicles at the property under the control of the occupants." The application was based on a purchase made at the home by an informant during the course of an ongoing investigation. *Id.* at 231. After receiving the warrant but before entering the home, the defendant came out and drove away in his car. *Id.* After stopping the defendant, police searched him and his car, finding controlled substances and drug paraphernalia. *Id.* The defendant claimed the warrant was overbroad in describing the vehicles to be searched. *Id.* The court examined the information provided in the warrant application, especially that from ongoing surveillance and investigation, and found the issuing judge could have reasonably inferred from these facts that controlled substances were in the vehicles driven by those present at the mobile home. *Id.* at 232. For these reasons, the warrant was in fact supported by sufficient probable cause. *Id. See also Everroad v. State,* 442 N.E.2d 994, 1005 (Ind.1982).

In *State v. Hill,* 465 N.W.2d 309, 311 (Iowa Ct.App.1990), our court of appeals considered a warrant which authorized police to search an apartment and "any person at the residence and any vehicle under their control." The defendant, a visitor to the apartment, was stopped and searched along with his car shortly after leaving the apartment. *Id.* at 311. The defendant argued the warrant was overbroad because it allowed police to search the cars of all visitors to the apartment, no matter how casual. *Id.* The court held the warrant was valid and stated the following:

> This was not a warrant to search Grand Central Station or the local K–Mart. The warrant in this case was limited to the persons in the apartment and to the cars under their control at the time of its execution. We hold it was sufficiently specific under the circumstances to authorize the search in question.

*Id.*

■ Although all persons warrants under other circumstances have been upheld, we have not yet been faced with such a question as to a warrant to search all persons present in a public place. *See Stroeber v. Commission Veterans Auditorium,* 453 F.Supp. 926, 929 (S.D.Iowa 1977) (holding random, warrantless searches of concertgoers for drug paraphernalia and other contraband invalid). Several other jurisdictions have encountered this issue and case law in this area is instructive. In *People v. Nieves,* 36 N.Y.2d 396, 369 N.Y.S.2d 50, 60, 330 N.E.2d 26, 34 (1975), the New York Court of Appeals established criteria to use in examining warrants authorizing the search of all occupants of a particular area. Under the *Nieves* standards, the application must set out the character of the premises, including its location, size, and public or private character; the nature of the illegal conduct at issue; the number and behavior of persons expected to be present when the warrant is to be executed; whether any persons unconnected with the alleged illegal activity have been seen on the premises; and the precise area and time in which the alleged activity is to take place. *Id.* The court also emphasized that in making the determination whether a particular warrant was reasonable, it is also necessary to consider the necessity for this particular search, the nature of the suspected crime, and the difficulty of being more specific in the description. *Id.* Taken as a whole, the facts presented to the judge must present a "substantial probability that the authorized invasions of privacy will be justified by the discovery of the items sought from all persons present when the warrant is executed." *Id.* If these requirements are not met, then under this standard, each individual to be

searched must be identified by name or description. *Id.*

The Minnesota courts have also been faced with this issue in two similar cases, *State v. Hinkel*, 365 N.W.2d 774, 775 (Minn.1985) and *State v. Robinson*, 371 N.W.2d 624, 625 (Minn.Ct.App.1985). In *Hinkel*, a warrant issued authorizing the search of a house and "all persons on the premises." *Hinkel*, 365 N.W.2d at 775. The house at issue was referred to as an "after hours joint," a house to which people would come to buy liquor after the licensed bars had closed for the night. *Id.* The court upheld the warrant. *Id.* at 776. It explained, "The hour was late; the illegal activities carried on throughout the house. There was little likelihood that anyone would be in the house but to participate in the afterhours revelry." *Id.* It then contrasted this to the situation of *Ybarra v. Illinois*, 444 U.S. 85, 87–88, 100 S.Ct. 338, 340–41, 62 L.Ed.2d 238, 243–44 (1979). It explained that in *Hinkel* there was "little chance that any patron of the illegal afterhours joint was not participating in its illegal activities." *Id.*

In *Robinson*, the Minnesota Court of Appeals struck down an all persons warrant to search a licensed bar. *Robinson*, 371 N.W.2d at 626. The application was supported by two controlled buys, the presence of lookout persons at the doors of the bar, the fact that two officers had "stumbled across a drug buy on another occasion," and the general reputation in the community that "controlled substances would be present in the bar at any given time." *Id.* at 625. The court held this warrant was invalid because "the police were dealing with the patrons of a licensed bar operating during normal business hours," and there was "little likelihood that everyone in the bar on a Friday night would be involved in criminal activity." *Id.* at 626. Because two controlled buys and the other allegations in the affidavits were not sufficient to establish a nexus between the criminal activity and the fifty to eighty patrons of the bar, the warrant was an illegal general warrant. *Id.*

In the present case, the warrant application and supporting documents made the following allegations: the Drug Task Force had made more than thirty arrests for controlled substance delivery and solicitation during 1992 and 1993; that "The Bar" was a "focal point" of all activity in the area with persons constantly coming and going from The Bar; that eight controlled buys had recently been made, some of which were from persons with established records of drug trafficking; that drug transactions had been observed on the premises; that such transactions take place in the public areas of The Bar; and that at any given time it is the informant's belief that "a vast majority of the persons on the premises are either selling or holding crack cocaine at any given time." These allegations, without more, do not suffice to establish probable cause on which to base a warrant to search all persons present in The Bar. Nowhere in the application is there any recitation of the size characteristics of The Bar. From this application, there is no way a magistrate could even fathom a guess as to just how many individuals The Bar could hold at any given time. This would certainly be necessary in establishing probable cause as to every person present in The Bar.

In addition, the application also lacked any showing that the controlled substances were small and easily concealed, frequently by dealers' girlfriends. As we stated before, it is entirely irrelevant to a reviewing court that such testimony was presented at the suppression hearing as we are bound by the information provided to the issuing magistrate and may consider nothing more. *See Seager*, 341 N.W.2d at 426. Detective Devine, in his testimony at the suppression hearing, admitted there are no such allegations in the application. Although The Bar is not a large retail store like a Wal–Mart or Penney's department store, it is a *legally* operated, legitimate business. It is not a crack house or illegal after hours drinking house. Completely innocent unsuspecting persons could easily enter to make a legitimate purchase of legal merchandise. Even if the reputation of The Bar is such that no local people would enter without the intention to purchase or sell controlled substances, it is still quite possible someone from out of town or new to the area could stop in to ask directions, use a pay phone, or make a legal

purchase. Certainly there could be no probable cause to search such a person on the basis of their presence alone. The application itself even sets out that The Bar was the focal point of all foot traffic and activity in the area, hence this lends more credence to the argument an innocent passerby may stop in for a legitimate reason.

It is important to note this court is not condemning all "all persons" warrants across the board. It is certainly conceivable that there exist situations in which probable cause would be sufficient for such warrants, however, this is not one of them. In light of the fact there is no probable cause established to search all persons present in The Bar and the warrant is overbroad, it is a violation of the Fourth and Fourteenth Amendments to the United States Constitution and is therefore invalid.

### IV. The Good Faith Exception

 The State next raises the argument that even if the warrant is invalid, the fruits of the search should be admissible based on the good faith exception of *United States v. Leon*, 468 U.S. 897, 909, 104 S.Ct. 3405, 3413, 82 L.Ed.2d 677, 689–90 (1984). In assessing Fourth Amendment violations, this court is bound by federal law. *See Jamison*, 482 N.W.2d at 413. Because the United States has seen fit to recognize a good faith exception to the exclusionary rule, we consider its effect on the violation of the Fourth and Fourteenth Amendments to the United States Constitution found in division IV of this opinion. We also note that we have not yet recognized a good faith exception to the exclusionary rule under the Iowa Constitution, article I section 8, and have held that there is no good faith exception to our statutory requirements for issuance of a search warrant under Iowa Code sections 808.3 and 808.4 (1995). *See State v. Beckett*, 532 N.W.2d 751, 755 (Iowa 1995).

In *United States v. Leon*, the Court reiterated the following:

"The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to

admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."

*Leon*, 468 U.S. at 919, 104 S.Ct. at 3418, 82 L.Ed.2d at 696 (quoting *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 2318, 45 L.Ed.2d 374, 382 (1975)). The Court continued to state that the basis for the exclusionary rule would not be present in cases where the officer had acted with a good faith belief the search was constitutional:

"If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."

*Id.* at 919, 104 S.Ct. at 3419, 82 L.Ed.2d at 696 (quoting *Peltier*, 422 U.S. at 542, 95 S.Ct. at 2320, 45 L.Ed.2d at 374).

The State claims the evidence seized from Thomas should be admitted under this rule based on the officers' good faith reliance on the warrant they obtained. We do not believe the good faith exception of *Leon* to be applicable to this situation.

 As this court has previously recognized, *Leon* "does not provide an across-the-board reward for good faith." *Jamison*, 482 N.W.2d at 413; *see also State v. Iowa Dist. Court*, 472 N.W.2d 621, 624–25 (Iowa 1991). Under *Leon*, exclusion of such evidence is only to be denied "on an ad hoc basis in situations in which the officer's good faith motivation casts doubt on the deterrent effect of an exclusionary rule *in the particular situation*." *Id.* Commentators have also likened this rule to a case-by-case approach where exclusion is only denied where a refusal to do so would not serve the purposes of the Fourth Amendment. *See* Abraham S. Goldstein, *The Search Warrant, the Magistrate, and Judicial Review*, 62 N.Y.U.L.Rev. 1173, 1204–05 (1987); Donald Dripps, *Living*

*With Leon,* 95 Yale L.J. 906 (1986). The Court itself in *Leon* even set forth certain situations in which evidence should still be excluded. One of these situations exists when the warrant is so overbroad as to be facially deficient. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699. The warrant in this case, authorizing the search of "all persons located inside the premises ... at the time the Warrant is signed, and departing thereafter" was clearly facially deficient on this basis.

Another situation in which *Leon* calls for exclusion is when the warrant application is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* Again, as the warrant application is utterly lacking any allegations to establish a nexus between the defendant and any alleged criminal activity, it is certainly lacking sufficient indicia of probable cause so as to make official belief in its validity unreasonable. A reasonably experienced officer could not have reasonably believed in good faith a search of everyone present in a legally licensed public establishment during normal business hours would be valid under the Fourth Amendment.

V. Conclusion

Because the search warrant was an unconstitutionally overbroad general warrant and the facts presented do not fall within the good faith exception of *Leon,* we reverse the district court's ruling denying defendant's motion to suppress and remand for retrial.

**REVERSED AND REMANDED FOR NEW TRIAL.**

All justices concur except HARRIS, J., who dissents without opinion.