# IN THE COURT OF APPEALS OF IOWA

No. 23-0161
Filed April 24, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**VICTORIA JO DAWDY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Timothy Jarman,

Judge.


        A defendant appeals her conviction for third-offense operating while

intoxicated, challenging the denial of her motion to suppress.  **AFFIRMED.**


        Victoria Jo Dawdy, Sioux City, self-represented appellant.

        Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


        Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

Victoria Dawdy was convicted of third-offense operating while intoxicated after she crashed her vehicle through a construction zone in Sioux City and into a parked vehicle. She appeals the denial of her motion to suppress, claiming the warrant authorizing a blood draw was not supported by probable cause in violation of the federal and state constitutions.

We start our discussion with the deferential standard of review for search warrants because that standard dictates what we can consider in resolving the issue before us and the result of this appeal. *See State v. Bracy*, 971 N.W.2d 563, 564, 567 (Iowa 2022). Although we review Dawdy's constitutional challenge de novo, "we do not make an independent determination of probable cause; rather, we determine 'whether the issuing judge had a substantial basis for concluding probable cause existed.'" *Id.* at 567 (citation omitted). In assessing whether such a basis existed,

> we examine only the information actually presented to the judge. But we do not strictly scrutinize the sufficiency of the underlying affidavit. The affidavit of probable cause is interpreted in a common sense, rather than a hypertechnical, manner. We draw all reasonable inferences to support the judge's finding of probable cause and decide close cases in favor of upholding the validity of the warrant.

*Id.* (cleaned up).

Turning to the facts in the warrant application,[1] at roughly 8:45 p.m. on September 10, 2019, police officers responded to a report of a two-vehicle collision

---

[1] At the suppression hearing, the State presented testimony from the two police officers who investigated the accident. As related above, however, we "may not consider any other relevant information present in the record which was not presented to the neutral magistrate issuing the warrant." *State v. Thomas*, 540 N.W.2d 658, 662 (Iowa 1995). So, like the district court, we have confined our

in a construction zone. Before officers arrived, the driver of one of the vehicles—later identified as Dawdy—ran from the scene. Witnesses to the collision chased Dawdy and brought her back to the crash site.

Once officers got to the scene, they learned Dawdy was driving her vehicle northbound toward an intersection in "an active construction area where [n]orthbound lanes are blocked with construction cones and traffic is directed to the left through the construction." Even though the "construction [was] clearly visible from several blocks away," Dawdy "failed to follow the marked signage and proceeded straight through the cones and directly into a road closed sign." She collided head on with an electrical company's vehicle parked on the other side of the sign, significantly damaging both vehicles.

The warrant application noted that officers observed the following "indicators of [n]arcotic abuse and potentially other drugs" when dealing with Dawdy:

> When officers were speaking to the defendant it was observed her pupils were highly constricted. The defendant was very detached from her surroundings and non responsive other than whispering her own name. The defendant was incapable of focusing. The defendant would go through a cycle of tensing her whole body up and standing up then going flac[c]id and folding over herself. While officers were checking on her welfare she attempted to stand up and run from officers.

Though she "did not have any exterior injuries," paramedics transported Dawdy to the hospital to treat "possible internal injuries." She lost consciousness on the way. After arriving at the hospital, she had to be intubated by medical staff

---

probable-cause review to the information presented to the issuing magistrate: the warrant application with no attachments or addendums.

because she could not breathe on her own. Officer William Enockson of the Sioux City Police Department applied for a warrant for a blood or urine sample from Dawdy "in reference to an operating while intoxicated investigation." The application asserted: "It is believed evidence related to an investigation . . . is in the blood of the defendant." A magistrate found probable cause and issued the warrant.

A toxicology report from the state crime lab showed Dawdy's blood specimen was positive for amphetamines, methamphetamine, and midazolam. Dawdy was charged by trial information with third-offense operating while intoxicated. She filed a motion to suppress, arguing the warrant was not supported by probable cause because, among other things, the signs of impairment described in the application could have been due to "the trauma of her injuries from the accident." Following a hearing, the district court denied Dawdy's motion.

Limiting its review to the warrant application, the court found "there was already something seriously 'wrong' with the defendant *before* she would have suffered any injuries from the collision" considering how it occurred. The court also highlighted Dawdy's behavior after the collision, including her flight from the scene, constricted pupils, inability to focus, and body's "cycles of tensing up and then going flaccid." While the court acknowledged those "might have been symptoms of internal injuries, they were also indicators of substance abuse." Based on the totality of the circumstances, the court concluded the magistrate's determination of probable cause had a substantial basis.

After her suppression motion was denied, Dawdy waived her right to a jury trial and stipulated to a bench trial on the minutes of testimony, attachments to

those minutes, and videos related to the incident. The court found Dawdy guilty as charged, and she stipulated to her prior convictions.

On appeal, Dawdy claims the warrant was not supported by probable cause because the application was missing key facts—that no standardized field sobriety tests were performed, medical professionals did not determine whether she was under the influence, and the application did not explain conditions that could mimic impairment.[2] She also repeats a complaint she made in district court—that the application's "non-specific statements do not provide the probable cause necessary to justify the issuance of a warrant." As to the court's conclusion that Dawdy's driving showed something was "wrong" with her, Dawdy asserts that does not mean she did something criminal. Finally, Dawdy reiterates her argument that her post-collision mannerisms "could as well have been caused by the collision as have been the result of drug abuse."

Dawdy's arguments assign too high of a standard for the determination before us: whether the issuing magistrate had a substantial basis to conclude that a person of reasonable prudence would believe evidence of a crime could be found in Dawdy's blood or urine. *See id.* Adopting Dawdy's approach "would deny the deference we are supposed to afford warrants that have been approved by a magistrate." *Id.* at 570. And it would require a hypertechnical interpretation of the warrant application, rather than the common-sense one we must employ. *Id.*

---

[2] To the extent that Dawdy is arguing certain facts were recklessly omitted from the warrant application, *see State v. Poulin*, 620 N.W.2d 287, 289 (Iowa 2000), we agree with the State that error was not preserved because that issue was neither raised in nor decided by the district court. *See State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal.").

at 567. Upon "look[ing] at the entirety of the warrant application and draw[ing] reasonable inferences in support of the warrant, there was clearly a substantial basis for finding probable cause" that Dawdy was operating while intoxicated and evidence of that would be found in her blood or urine. *See id.* at 568.

Dawdy plowed through clearly visible cones and a road-closed sign in a construction zone before she rammed head-on into a parked vehicle, hitting it hard enough to significantly damage both vehicles—"possibly total[ ]ing" them both. *See State v. Roe*, No. 22-1764, 2023 WL 7391721, at *3–4 (Iowa Ct. App. Nov. 8, 2023) (considering the "dynamics of a serious motorcycle crash" in finding a search warrant for the defendant's blood was supported by probable cause). Then she ran from the scene of the crash. *See State v. Bumpus*, 459 N.W.2d 619, 625 (Iowa 1990) ("While flight alone does not give rise to probable cause, it may, when coupled with a preexisting reasonable suspicion 'elevate the preexisting suspicion up to the requisite Fourth Amendment level of probable cause.'" (citation omitted)). After witnesses brought her back, officers observed multiple signs that Dawdy was impaired by some sort of drug other than alcohol. *See Roe*, 2023 WL 7391721, at *3 (considering signs of impairment observed by officer). While the officers were tending to her, Dawdy tried to flee the scene again.

The totality of these facts would allow a person of reasonable prudence to believe that Dawdy was operating while intoxicated. The issuing magistrate therefore had a substantial basis to conclude probable cause existed. We accordingly affirm the district court's denial of Dawdy's motion to suppress.

**AFFIRMED.**