# IN THE COURT OF APPEALS OF IOWA

No. 14-2129
Filed May 25, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEREMY LEE SCHROEDER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Clayton County, Richard D. Stochl, Judge.

The defendant appeals from his convictions for conspiracy to manufacture methamphetamine, possession of anhydrous ammonia with intent to manufacture methamphetamine, possession of methamphetamine, and possession of marijuana. **AFFIRMED.**

Wallace L. Taylor of Law Offices of Wallace L. Taylor, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Jeremy Schroeder appeals from his convictions for conspiracy to manufacture methamphetamine, possession of anhydrous ammonia with intent to manufacture methamphetamine, possession of methamphetamine, and possession of marijuana. Schroeder maintains the district court should have granted his motion to suppress evidence because the warrant application lacked sufficient probable cause to place his bedroom within the scope of the search. He also maintains the district court erred when it denied his motion for judgment of acquittal,[1] and he claims trial counsel was ineffective for failing to impeach an officer at trial with his testimony from the suppression hearing.

**I. Background Facts and Proceedings**

On February 14, 2013, conservation officers from the Iowa Department of Natural Resources (DNR) executed a search warrant at Schroeder's residence. Schroeder's adult son, who was living in Schroeder's home at the time, was the subject of the investigation. The DNR officers had been told Schroeder was believed to be involved in the manufacturing of methamphetamine in a briefing by the sheriff's department earlier that morning. They were warned about the dangerous nature of many of the substances used in the manufacturing process and were told to call the sheriff's department for assistance if they "came across something they had questions on that may be clan[destine]-lab[oratory] related."

---

[1] Although appellate counsel refers to the defendant's motion as one for directed verdict, it appears trial counsel correctly made a motion for judgment of acquittal. For purposes of the appeal, we treat appellate counsel's claim regarding a motion for a directed verdict as a claim regarding a motion for judgment of acquittal. *See State v. Adney*, 639 N.W.2d 246, 249 n.2 (Iowa Ct. App. 2001); *see also State v. Deets*, 195 N.W.2d 118, 123 (Iowa 1972) (holding that grant of motion for directed verdict is tantamount to a judgment of acquittal in a criminal action), *overruled on other grounds by State v. Walker*, 574 N.W.2d 280, 283 (Iowa 1998).

While executing the warrant, the officers searched the entire home, including Schroeder's bedroom. Approximately half an hour into their search, the DNR officers called the local sheriff's department for assistance.

Based on items found during the execution of the search warrant and alleged admissions made by Schroeder to police officer, Brent Ostrander, Schroeder was charged by trial information with conspiracy to manufacture a controlled substance (methamphetamine), in violation of Iowa Code sections 124.401(1)(b)(7) and 706.1 (2013); possession of anhydrous ammonia with intent to manufacture a controlled substance (methamphetamine), in violation of section 124.401(4)(d); possession of a controlled substance (methamphetamine), third offense, in violation of section 124.401(5); and possession of a controlled substance (marijuana), second offense, in violation of section 124.401(5).

Schroeder filed a motion to suppress on August 1, 2014. The motion asserted, "The search warrant application lacked sufficient probable cause to allow for a search of the Defendant's bedroom. That search of the bedroom was outside the scope of the warrant and therefore unconstitutional."[2] Schroeder argued that because the purpose of the warrant was to search for evidence of crimes committed by his adult son who rented a room in the home, the warrant did not authorize a search of Schroeder's bedroom.

At a hearing held on the matter, the son testified that he was renting from his father at the time the search warrant was executed. The son lived

---

[2] Although the search warrant application is not part of the record for our review, testimony at the suppression hearing indicated that the basis for the application was illegal hunting by Schroeder's son, and the officers requested to search "the residence, outbuildings, and on the whole premises" for "any wildlife" or "parts thereof."

downstairs, which could be entered either by stairs from the main level of the residence or from a separate outside entrance. The son's bedroom, as well as a kitchen, bathroom, and living room, were downstairs along with another bedroom and a common-use laundry room. The son testified that in lieu of rent, he paid the electric bill for the entire residence—which usually cost approximately $400— and helped with some chores. Schroeder's bedroom was a lofted room, accessed by stairs from the upstairs living room, which comprised the entire second-story of the home. The bedroom was partially open to the living room below, with only a half-wall on the side of the bedroom over the living room. The officers found a bucket containing a green leafy substance in Schroeder's room. The substance was later tested and confirmed to be eighteen grams of marijuana. Also recovered from the room was a bucket containing, among other things, a scale and eighteen small plastic bags. According to the lab report prepared by the Iowa Division of Criminal Investigation (DCI) laboratory, each of the eighteen small bags had a white powder residue in it, but only one was tested. The test confirmed that the residue included methamphetamine.

On August 12, 2014, the district court denied Schroeder's motion to suppress. The court ruled:

> There was probable cause to believe the objects sought by officers, wildlife contraband, could have been located through the entire household. The warrant allowed for such a search and was executed within its scope.
> This court does not believe the Schroeder residence contained more than one single-family residence. It was a home where [the son] lived with his father in a basement bedroom. The warrant allowed the officers to search the entire residence. They were not precluded from expanding that search to [Schroeder's] upstairs bedroom.

The jury trial commenced on October 29, 2014. At trial, Officer Ostrander testified that he had initially begun investigating Schroeder for manufacturing methamphetamine due to information he received from the National Precursor Log Exchange, which tracks people's purchases of pseudoephedrine. Ostrander noted that Schroeder and his fiancée made fifty-five purchases of pseudoephedrine in a fifty-two week period. The parties never purchased more than is allowed in a thirty-day cycle, but they appeared to be regularly taking turns purchasing it.

DNR conservation officer Jerry Farmer and Officer Ostrander testified regarding the various suspicious items they recovered while executing the search warrant: an "ice cream pail with the green leafy substance in it" and multiple small, clear bags with a white residue inside of them in Schroeder's bedroom; a "big glass jar" with clear liquid in it, a "jug of muriatic acid," lantern fuel, coffee filters, "crumpled" pieces of aluminum foil, and a lithium battery in the laundry room; three tanks including one believed to contain anhydrous ammonia, a bottle identified as an HCL generator,[3] and multiple burnt "blister packs," which had contained pseudoephedrine, outside of the home.

Officer Ostrander testified that Schroeder arrived at the home soon after he arrived at the residence. He stated that Schroeder walked around with him during the search and was very cordial and communicative. According to Ostrander, Schroeder told him the tanks had been used to hold anhydrous ammonia, showed him where the HCL generator was, admitted he was buying pseudoephedrine to sell to an unnamed manufacturer of methamphetamine for

---

[3] A hydrogen chloride gas generator

twenty-five dollars per package, and told him the laundry room was the location of an "old cook" that had taken place "one to two months prior."

Officer Mark Kautman testified about the results from the DCI lab. One of the jars of clear liquid "was consistent with the remains of methamphetamine that had been manufactured." Based on the burnt blister packs, the lab concluded there were six grams of pseudoephedrine, and that would produce a "theoretical yield" of 5.52 grams of methamphetamine. The report contains a statement that "[t]he actual yield in any chemical synthesis is always less than the theoretical yield." Three of the liquids tested contained a compound or mixture of methamphetamine and had net weights of 328.1 grams, 332.1 grams, and 172.1 grams. Officer Kautman also testified about the various ingredients and processes necessary to make methamphetamine and why the various recovered items, although legal to own individually, were suspicious in nature when considered together.

Schroeder testified in his own defense. He denied telling Officer Ostrander that the corroding tanks had held anhydrous or were used to make methamphetamine; denied that the bottle recovered outside was an HCL generator, or that he had ever stated it was; denied admitting that he sells packages of pseudoephedrine to a manufacturer for profit; and denied telling Officer Ostrander the laundry room of the home had been used for an "old cook." Schroeder did admit the marijuana recovered from his bedroom was his and stated that he "self-medicates" with it. He testified he buys pseudoephedrine often because, as a logger who works outside and is exposed to damp weather and allergens, he takes it daily. Schroeder testified that Ostrander had

threatened him while the officers were executing the search warrant, stating he could "make it look bad" if Schroeder would not agree to work with him as an informant.

On October 30, 2014, the jury returned a guilty verdict for each of the four charged offenses. Schroeder was sentenced to a term of incarceration not to exceed twenty-five years for conspiracy to manufacture methamphetamine, and the other three sentences were set to run concurrently.

Schroeder appeals.

## II. Standard of Review

We review the totality of the circumstances to determine whether probable cause has been established for the issuance of a search warrant. *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004). "The existence of probable cause to search a particular area depends on whether a person of reasonable prudence would believe that evidence of a crime might be located on the premises to be searched." *Id.* The issuing judge must "'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit' presented to the judge, there is a fair probability that law enforcement authorities will find evidence of a crime at a particular place." *Id.* (citation omitted).

"A motion for judgment of acquittal is a means of challenging the sufficiency of the evidence, and we review such claims for corrections of errors at law." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). If a verdict is supported by substantial evidence, we uphold the finding of guilt. *State v. Henderson*, 696 N.W.2d 5, 7 (Iowa 2005). "In conducting our review, we consider all the evidence, that which detracts from the verdict, as well as that

supporting the verdict." *Id.* We review the evidence in the light most favorable to the State. *Id.*

Insofar as Schroeder makes a claim for ineffective assistance of trial counsel, we review the claim de novo. *State v. Willis*, 696 N.W.2d 20, 22 (Iowa 2005).

## III. Discussion

### A. Motion to Suppress

Schroeder maintains the district court should have granted his motion to suppress evidence because the warrant application lacked sufficient probable cause to place his bedroom within the scope of the search.[4]

In making his argument, Schroeder relies on *State v. Fleming*, 790 N.W.2d 560, 567 (Iowa 2010). In *Fleming*, the defendant was renting a room in a single-family home where officers executed a search warrant. 790 N.W.2d at 563. The officers searched the home based on probable cause one of the other residents, Nearman, was selling drugs out of the home. *Id.* at 562. The defendant was not related to the other resident, and he had exclusive possession of his room. *Id.* at 563. The officers searched the entire residence, including the defendant's room, where they found a small amount of marijuana. *Id.* at 562. Although there was a valid search warrant issued for the residence, the defendant argued his bedroom was outside of the scope of the warrant. *Id.* at 564. The court considered

---

[4] On appeal, Schroeder also argues that the tanks, which purportedly held anhydrous ammonia, were "far behind the Schroeder house" and "not anywhere near the Schroeder house or outbuildings"—the area sanctioned to be searched by the warrant. As such, he also maintains the testimony about the tanks should have been suppressed by the district court. However, Schroeder did not make this argument to the district court, and we decline to consider it on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

whether a "separate search warrant was required for a room rented within Nearman's house." *Id.* at 563. The court used a two-step analysis: "First, we decide whether the person challenging the search has shown a legitimate expectation of privacy in the area searched. If so, we then 'consider whether the State has unreasonably invaded that protected interest.'" *Id.* at 564 (citation omitted). The party challenging the legality of the search has the burden of showing they had a legitimate expectation of privacy in the area searched. *Id.* The court determined the defendant had an expectation of privacy in his rented room and the officers had invaded it without probable cause that there was evidence of any illegality. *Id.* at 567–68. As such, the court ruled the search was warrantless, and because the State did not establish that an applicable exception made a warrant unnecessary, the evidence was suppressed. *Id.* at 568.

To decide Schroeder's claim, we must determine whether he had a legitimate expectation of privacy in his bedroom and, if he did, whether the search of his room was supported by an independent showing of probable cause. *See id.* at 567. However, we are unable to review whether officers had probable cause to search Schroeder's room because the application for the search warrant presented to the magistrate is not part of our record for review. *See State v. Thomas*, 540 N.W.2d 658, 661–62 (Iowa 1995) ("It is well established in Iowa jurisprudence that the issuance of a search warrant is to be 'tested entirely by the recitals in affidavits and the magistrate's abstracts of oral testimony endorsed on the application.'" (citation omitted)); *see also State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997) ("In determining whether a substantial basis existed for a finding of probable cause, we are 'limited to consideration of only

that information, reduced to writing, which was actually presented to the [judge] at the time the application for warrant was made.'" (alteration in original) (citation omitted)). Here, there is no indication the hearing judge or counsel had a copy of the application or warrant. We do not have it to review. As such, we decline to consider Schroeder's claim that the evidence obtained while searching his bedroom should have been suppressed. *See Fleming*, 790 N.W.2d at 568 (noting the court refused to consider testimony from the suppression hearing because it was outside of the warrant application).

**B. Motion for Judgment of Acquittal**

Schroeder maintains the district court erred in denying his motions for judgment of acquittal regarding the charges of conspiracy to manufacture methamphetamine and possession of anhydrous ammonia with intent to manufacture methamphetamine.

***1. Conspiracy to Manufacture Methamphetamine:*** The State had the burden to establish:

> (1) There was an agreement between the defendant and [his fiancée] to manufacture methamphetamine;
> (2) The defendant entered into the agreement with the intent to promote or facilitate the manufacture of methamphetamine;
> (3) Either the defendant or [his fiancée] committed an overt act; and
> (4) [Schroeder's fiancée] was not a law enforcement agent.

Additionally, based on the code section Schroeder was charged and convicted under, Iowa Code section 124.401(1)(b)((7), the State had to prove Schroeder conspired to manufacture more than five grams of methamphetamine.

Schroeder maintains there was not sufficient evidence to support a finding that there was an agreement between himself and his fiancée to manufacture

methamphetamine, nor that they conspired to manufacture more than five grams. At trial, the State introduced evidence that Schroeder's fiancée had been living with him in the home where an "old cook" had recently occurred. Additionally, using the National Precursor Log Exchange, the State was able to establish that Schroeder and his fiancée had been regularly taking turns buying pseudoephedrine, a key ingredient in methamphetamine, for at least one year. "Since a conspiracy is by nature clandestine, it will often rest upon circumstantial evidence and inferences drawn from that evidence." *State v. Corsi*, 686 N.W.2d 215, 219 (Iowa 2004). "Circumstantial evidence includes the declarations and conduct of the alleged conspirators . . . ." *State v. Speicher*, 625 N.W.2d 738, 742 (Iowa 2001). "Importantly, an agreement need not be—and often times is not—formal and express." *Id.*

Here, viewing the evidence in the light most favorable to the State, there is sufficient evidence to support a conviction for conspiracy to manufacture methamphetamine. Additionally, there is sufficient evidence that Schroeder conspired to manufacture "[m]ore than five grams . . . of methamphetamine . . . or any compound, mixture, or preparation which contains any quantity or detectable amount of methamphetamine." *See* Iowa Code § 124.401(1)(b)(7). The lab report prepared by the DCI, which was admitted into evidence, concluded Schroeder had enough pseudoephedrine to produce a "theoretical yield" of 5.52 grams of methamphetamine. *See State v. Casady*, 597 N.W.2d 801, 807 (Iowa 1999) (affirming the defendant's conviction for conspiracy to manufacture methamphetamine in the amount of more than five grams based on the laboratory report estimating the possible yield from the recovered

precursors). Additionally, three of the liquids recovered during the search contained a compound or mixture of methamphetamine and had net weights of 328.1 grams, 332.1 grams, and 172.1 grams.

Because there is sufficient evidence to support a conviction for conspiracy to manufacture more than five grams of methamphetamine, the district court did not err in denying Schroeder's motion for judgment of acquittal.

***2. Possession of Anhydrous Ammonia with Intent to Manufacture Methamphetamine:*** Schroeder maintains the district court erred in denying his motion for judgment of acquittal regarding the charge for possession of anhydrous ammonia with intent to manufacture methamphetamine because "the tank was never tested to determine if the unknown liquid in the tank was in fact anhydrous ammonia."

At trial, Officer Ostrander testified that he was initially suspicious of the tanks because "[a]nhydrous ammonia attacks metals aggressively and it leaves, like, a bluish corrosion. And the necking on both of those tanks had the corrosions from what I—you know, consistent with what I have seen in the past with anhydrous." Because of his suspicion, the officer released the valve on the tank that was still under pressure, and when doing so, he smelled anhydrous ammonia. He testified that in the course of his employment he has "been exposed to it, I've witnessed it, and I've smelled it in the past." Although there was no official testing done of the contents of the tank, viewing the evidence in the light most favorable to the State, the officer's testimony is enough to establish that it was anhydrous in the tank. As such, the district court did not err in denying Schroeder's motion for judgment of acquittal.

**C. Ineffective Assistance of Counsel**

Schroeder maintains Officer Ostrander testified inconsistently regarding the purported anhydrous ammonia in the tank and his trial counsel was ineffective for failing to impeach the officer. Schroeder maintains that at his trial, Officer Ostrander testified he released the valve on the pressurized tank and identified the contents to be anhydrous ammonia but Officer Ostrander testified at the suppression hearing that "the contents were rainwater."

At the suppression hearing, the following exchange took place during direct examination of Officer Ostrander:

> Q: Were you—did you attempt to release the valve on the tank to expose what type of liquid might be inside? A: I attempted to, yes, open the valve to see if it was under pressure.
> Q: And what—did you find that it was under pressure? A: Yes, sir.
> Q: Was there any discharge from the tank when you opened the valve? A: There was a liquid that came out but it was believed to be maybe just rainwater that was sitting in the—I guess, in the neck of that—that valve.
> Q: So there was a discharge that you believe was water? A: As far as the liquid. But the odor and the chemical component was consistent with anhydrous ammonia.

Schroeder's claim of ineffective assistance is based on a misstatement of the record. As such, trial counsel had no duty to impeach the officer or confront him with his inconsistent statements. *See State v. Graves*, 668 N.W.2d 860, 881 (Iowa 2003) ("Trial counsel has no duty to raise an issue that has no merit."); *cf. Driscoss v. Delo*, 71 F.3d 701, 711 (8th Cir. 1995) (holding that "counsel's failure to impeach [an eyewitness] was a breach with so much potential to infect other evidence that, without it, there is a reasonable probability that the jury would find a reasonable doubt of [the defendant's] guilt"). Because Schroeder cannot

establish that counsel failed to perform an essential a duty, his claim of ineffective assistance fails. *See Anfinson v. State*, 758 N.W.2d 496, 499 (Iowa 2008) ("We may affirm . . . if either element is lacking.").

**IV. Conclusion**

Because we do not have the warrant application or the warrant as part of our record, we are unable to consider Schroeder's claim regarding his motion to suppress evidence obtained while officers executed a search warrant in his home. Sufficient evidence supports Schroeder's convictions for conspiracy to manufacture more than five grams of methamphetamine and possession of anhydrous ammonia with intent to manufacture methamphetamine, so the district court did not err in denying his motions for judgment of acquittal. Schroeder's claim that trial counsel was ineffective fails. We affirm.

**AFFIRMED.**