# IN THE SUPREME COURT OF IOWA

No. 08–1132

Filed November 12, 2010

**STATE OF IOWA,**

Appellee,

vs.

**JOSHUA DANIEL FLEMING,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Woodbury County, John C. Nelson, Judge.

The defendant appeals from his conviction for possession of marijuana, contending the district court erred in overruling his motion to suppress and arguing that when officers obtain a search warrant for a single-family residence they must obtain a separate warrant to search a rented room located therein. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorneys General, Patrick Jennings, County Attorney, and Jayme Kirsch, Assistant County Attorney, for appellee.

**BAKER, Justice**.

The defendant, Joshua Fleming, appeals from his conviction for possession of marijuana. He contends the district court erred in overruling his motion to suppress and argues that when officers obtain a search warrant for a single-family residence they must obtain a separate warrant to search a rented room located therein. We find Fleming had a reasonable expectation of privacy in his bedroom, and the officers violated that interest by searching his bedroom without obtaining a search warrant authorizing a search of that area. The decision of the court of appeals is vacated and the district court judgment reversed.

## I. Background Facts and Proceedings.

Joshua Fleming was charged by trial information with possession of a controlled substance in violation of Iowa Code section 124.401(5) (2007). This charge stemmed from a search warrant that was executed at 922 Wright Avenue, Sioux City, Iowa. The search uncovered six pounds of marijuana and $14,000 in cash. It also uncovered a small amount of marijuana that was found in Fleming's bedroom.

The search warrant was based upon a traffic stop made by Officer William Nice after Nice pulled over Cory Leckband and Jacob Lammers for failure to wear a seatbelt. Nice testified that when he approached the vehicle he could smell marijuana emanating from the vehicle and asked the men how long it had been since they last smoked marijuana. Leckband answered that it had been about thirty minutes, and both men were arrested.

In post *Miranda* interviews, Lammers and Leckband both told the officer that they were on their way to purchase one pound of marijuana from an individual named Andrew Nearman. Both men indicated that Nearman lived in the Riverside area of Sioux City. Lammers also gave

police a description of the vehicle Nearman drove and agreed to take the police to the location of Nearman's residence. The police were also informed that other roommates lived at the residence. The Sioux City police dispatcher verified that the home pointed out by Lammers belonged to Nearman and that Nearman's vehicle was registered at that address.

Based upon this information, the officers obtained a search warrant for Nearman's residence authorizing a search for marijuana and related items in the possession of Nearman. Several officers knocked on the front door of the residence. They reported that Fleming went to the front door, looked through the glass portion, saw it was the police, and turned and walked away from the door. At that point, the officers broke the door down. They detained two men in the living room. Fleming was located and detained in the dining room. Nearman was found in a back room by the kitchen and detained. All four of the men were identified and detained in the dining room for the duration of the search.

After detaining the men, the officers searched the entire residence. They found a guitar case containing marijuana in the basement, a large duffel bag containing approximately five pounds of marijuana under Nearman's bed, and $14,000 in cash inside Nearman's bedside table. They also found small quantities of marijuana in the other two bedrooms. Fleming's bedroom was searched by Officer Troy Hansen. Hansen testified that he saw papers for a Progressive Insurance policy made out to Fleming listing the Nearman home as his residence. Hansen also found a baggy of marijuana on the floor of the closet. Fleming remained detained in the kitchen, but none of the officers talked to him about the items found in the bedroom or inquired about whether he lived at the residence.

Fleming filed a motion to suppress any physical evidence recovered by the officers. Fleming argued that the evidence was obtained in violation of his Fourth Amendment rights guaranteed by the United States Constitution and article I, section 8 of the Iowa Constitution. Fleming claimed the application for the search warrant was defective because it failed to establish the reliability and veracity of the informants. He also claimed the search of his bedroom was outside the scope of the warrant because he had exclusive possession of the room, and Iowa does not recognize a good faith exception to the exclusionary rule.

A hearing was held on Fleming's motion where he testified that he rented his room from Nearman for $375 a month and had exclusive possession of the room. The district court held that the scope of the warrant extended to Fleming's room as the warrant contemplated the entire residence at 922 Wright Avenue, and Fleming did not have a reasonable expectation of privacy in his bedroom. A bench trial was held on Fleming's possession charge, and the court found Fleming guilty.

Fleming appealed, once again claiming that the search of his bedroom was outside the scope of the warrant. His appeal was routed to the court of appeals. The court of appeals affirmed the district court. Fleming then filed an application for further review with this court, which we accepted.

## II. Scope of Review.

Fleming claims that the search of his bedroom was in violation of his Fourth Amendment rights under the United States Constitution and article I, section 8 of the Iowa Constitution. Our review of his claim is therefore de novo. *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

This review requires " 'an independent evaluation of the totality of the circumstances as shown by the entire record.' " In doing so, we give deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses, but are not bound by such findings.

*Id.* (quoting *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001)).

### III. Discussion and Analysis.

The specific question we must determine is whether a separate search warrant was required for a room rented within Nearman's house. Fleming has alleged the search of his rented room violated his right to be free from unreasonable search and seizure guaranteed under both the United States Constitution and the Iowa Constitution. Article I, section 8 of the Iowa Constitution provides:

The right of the people to be secure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.

Iowa Const. art. I, sec. 8. The Fourth Amendment to the United States Constitution guarantees:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The constitutional guarantees of the Fourth Amendment have been declared enforceable against the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L. Ed. 2d 1081, 1090 (1961).

Generally, the rights contained in the Fourth Amendment and the Iowa Constitution are "deemed to be identical in scope, import, and

purpose." *State v. Groff*, 323 N.W.2d 204, 207 (Iowa 1982). In evaluating claims under the Iowa Constitution, the United States Supreme Court interpretation of a parallel federal constitutional provision may be persuasive authority, but is no more binding on this court on the state constitutional issue than the cases of other state supreme courts. We jealously reserve the right to interpret our state constitution in a fashion that provides greater protection. *State v. Cline*, 617 N.W.2d 277, 284–85 (Iowa 2000) ("[A]lthough this court cannot interpret the Iowa Constitution to provide *less* protection than that provided by the United States Constitution, the court is free to interpret our constitution as providing *greater* protection for our citizens' constitutional rights."), *overruled on other grounds by Turner*, 630 N.W.2d at 606 n. 2; *see also Graves v. State*, 708 So. 2d 858, 861 (Miss. 1997) (declaring the state constitution provides greater protection of an individual's reasonable expectation of privacy than that provided under the federal law).

In determining whether there has been a Fourth Amendment violation, this court has adopted a two-step approach. *State v. Legg*, 633 N.W.2d 763, 767 (Iowa 2001). "First, we decide whether the person challenging the search has shown a legitimate expectation of privacy in the area searched. If so, we then 'consider whether the State has unreasonably invaded that protected interest.' " *Id.* (quoting *State v. Breuer*, 577 N.W.2d 41, 45 (Iowa 1998)) (citations omitted). The parties have employed the two-step test in their analysis of the issue in this case. The two-step privacy test is often helpful in resolving cases under the Iowa Constitution, and, as a result, we employ it in this case.

**A. Expectation of Privacy.** Ordinarily, the police must obtain a search warrant before entering or searching an area where a person has

a reasonable expectation of privacy. *State v. Ortiz*, 618 N.W.2d 556, 559 (Iowa 2000); *see also Breuer*, 577 N.W.2d at 45. In this case, there was a valid search warrant issued for the residence located at 922 Wright Avenue in Sioux City. Fleming does not appear to be arguing the warrant itself was invalid; rather, he is claiming his bedroom was outside the scope of the warrant.

An individual challenging the legality of a search has the burden of showing a legitimate expectation of privacy in the area searched. *Ortiz*, 618 N.W.2d at 559 (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633, 641 (1980)). "The determination of whether a person has a legitimate expectation of privacy with respect to a certain area is made on a case-by-case basis, considering the unique facts of each particular situation." *Breuer*, 577 N.W.2d at 46. The expectation must also be one that society considers reasonable. *Id.* What society considers reasonable is determined by examining property laws as well as society's generally recognized and permitted expectations about privacy. *Id.* Whether an individual enjoys an expectation of privacy in a rented room within a house that is lived in communally is an issue of first impression for this court.

The United States Supreme Court has also never addressed this precise question. It has, however, addressed related questions. It has firmly established that the Fourth Amendment secures an expectation of privacy in one's home. *Payton v. New York*, 445 U.S. 573, 585, 100 S. Ct. 1371, 1379, 63 L. Ed. 2d 639, 650 (1980); *Agnello v. United States*, 269 U.S. 20, 32, 46 S. Ct. 4, 6, 70 L. Ed. 145, 149 (1925). It found this expectation of privacy extends to the dwellings of renters, even when police obtain the landlord's consent. *Chapman v. United States*, 365 U.S. 610, 617, 81 S. Ct. 776, 780, 5 L. Ed. 2d 828, 833–34 (1961). It has also

extended this expectation of privacy to tenants living in buildings with multiple units. *See Maryland v. Garrison*, 480 U.S. 79, 86, 107 S. Ct. 1013, 1017–18, 94 L. Ed. 2d 72, 82 (1987). It has even extended this expectation of privacy to hotel and motel rooms, *Stoner v. California*, 376 U.S. 483, 490, 84 S. Ct. 889, 893, 11 L. Ed. 2d 856, 861 (1964) ("[A] guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures."), and social guests in the home of their host or hostess. *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S. Ct. 1684, 1688, 109 L. Ed. 2d 85, 93 (1990) (holding overnight guests have a reasonable expectation of privacy in the home of their host or hostess).

When the United States Supreme Court held that individuals have an expectation of privacy in hotel and motel rooms, it acknowledged that when a person purchases a hotel room he gives "implied or express permission . . . to such persons as maids, janitors or repairmen" to enter his room. *United States v. Jeffers*, 342 U.S. 48, 51–52, 72 S. Ct. 93, 95, 96 L. Ed. 59, 64 (1951). The Court found an expectation of privacy even though the room was accessible to others. *Id.* Similarly, the Court found an expectation of privacy for social guests in the home of their host, even though that area is clearly accessible to others, namely the owner, his family, and friends. *Olson*, 495 U.S. at 98–99, 110 S. Ct. at 1689, 109 L. Ed. 2d at 94–95. It has even found a temporary expectation of privacy in a telephone booth, which is an area that is usually open to the public. *Katz v. United States*, 389 U.S. 347, 352, 88 S. Ct. 507, 511–12, 19 L. Ed. 2d 576, 582 (1967). These cases demonstrate that the ability to exclude all other individuals from an area does not appear necessary for a person's expectation of privacy to be reasonable. *See also In re Marriage of Tigges*, 758 N.W.2d 824, 827 (Iowa 2008) ("[Wife]'s expectation of privacy [in her bedroom] . . . is not rendered unreasonable

by the fact Jeffrey was her spouse at the time in question, or by the fact that Jeffrey may have been living in the dwelling at that time.").

The types of dwellings in which the Court has found an expectation of privacy have many commonalities with a rented room in a house. In *Olson*, the Court held that the test is whether an individual has "an expectation of privacy in the home that society is prepared to recognize as reasonable." *Olson*, 495 U.S. at 96–97, 110 S. Ct. at 1688, 109 L. Ed. 2d at 93. We believe the Court has implicitly considered many underlying factual circumstances, such as the ability to exclude others from the property, to store possessions on the property, and to sleep undisturbed on the property, when determining whether an expectation of privacy exists. *See generally Chapman*, 365 U.S. at 616–17, 81 S. Ct. at 780, 5 L. Ed. 2d at 833; *Stoner*, 376 U.S. at 490, 84 S. Ct. at 893, 11 L. Ed. 2d at 864.

Cases from other jurisdictions support the proposition that renters do enjoy exclusive use of their rooms. *See, e.g., United States v. Greathouse*, 297 F. Supp. 2d 1264, 1274–75 (D. Or. 2003). In *Greathouse*, the court declared rented spaces need not be self-contained units with their own kitchen and bathrooms, separate locks, or mailing addresses. *Id.* at 1274. The court found the physical layout of the residence was not dispositive. *Id.* Rather, in determining that a renter in a communally shared house does have a reasonable expectation of privacy in his or her bedroom, the court relied upon the lack of any familial relation between the residents, the defendant's closed door, a "Do Not Enter" sign posted on the bedroom door, and the residents' presence at the home during the search and advisement that the defendant was a renter and lived in the back bedroom. *Id.* at 1274–75. The court found that once the police determined there were separate residences within

the house, they should have stopped the search and obtained a separate warrant for the defendant's bedroom. *Id.* at 1275.

We also note *Graves*, which held that under the Mississippi Constitution an individual possessed a reasonable expectation of privacy in his solely and exclusively occupied portion of a house trailer. *Graves*, 708 So. 2d at 861; *see also Scott v. State*, 266 So. 2d 567, 569 (Miss. 1972) ("[W]here the proof shows that a person is renting a room or is in possession of a room in a house or an apartment under such circumstances as to make such person the owner thereof for the time being, such person is entitled to [a reasonable expectation of privacy].").

We recognize that authority exists which supports the contrary assertion—that an individual does not have an expectation of privacy in a rented room located within a house. *See United States v. Davis*, 557 F.2d 1239, 1248 (8th Cir. 1977); *United States v. Fennell*, 496 F. Supp. 2d 279, 282–83 (S.D.N.Y. 2007); *State v. Reynolds*, 218 P.3d 795, 800 (Idaho Ct. App. 2009); *Commonwealth v. Smith*, 898 S.W.2d 496, 500–01 (Ky. Ct. App. 1995) (explaining the community-living exception to the multiple-unit rule); *State v. Coatney*, 604 P.2d 1269, 1272 (Or. Ct. App. 1980) (declaring that where a house appears to be a single-family unit the warrant includes rented rooms within the house).[1] These cases observe the holding in *Garrison*, extending the expectation of privacy to tenants living in buildings with multiple units, but make a distinction between apartments or separate dwelling units and individuals renting

---

[1]As part of the analysis for this position, courts have sometimes relied on the fact that the police were unaware that unrelated persons were sharing the dwelling. Whether the police have a good faith reason to believe the residence is only a single-family dwelling has no bearing on our analysis. We do not recognize a good faith exception under the Iowa Constitution. *Cline*, 617 N.W.2d at 292–93.

rooms within a single family house. *Smith*, 898 S.W.2d at 500–01. This distinction is also referred to as the community-living exception. *Id.*

The community-living exception is based upon the premise that an individual renting a room in a house that is lived in communally does not have exclusive use of that area of the dwelling. *State v. Alexander*, 704 P.2d 618, 620 (Wash. Ct. App. 1985). As the Washington Court of Appeals explained:

> "[T]here is a broader justification for treating cases of community occupancy differently: where a significant portion of the premises is used in common and other portions, while ordinarily used by but one person for family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises. For example, if three persons share an apartment, using a living room, kitchen, bath and hall in common but holding separate bedrooms which are not locked, *whichever one of the three is responsible for the described items being in the apartment could have concealed those items anywhere within, including the bedrooms of his cotenants.*"

*Id.* (quoting 2 Wayne R. LaFave, *Search and Seizure* § 4.5(d), at 81 (1st ed. 1978)). *But see State v. Quigley*, 892 A.2d 211, 218–19 (Vt. 2005) (recognizing the community-living exception but refusing to apply it when a roommate's bedroom door is locked).

We reject the rationale behind the community–living exception. We must consider society's generally recognized and permitted expectations about privacy with respect to roommates living together in a single-family home. "Today it is not unusual to see a group of unrelated single persons living together and sharing expenses." *Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 266 (Iowa 2007) (Wiggins, J., dissenting).[2] We do not believe that when individuals decide on this type

---

[2]At the time of the 2000 census, over 135,000 Iowans were living with nonrelatives. *See* Bureau of the Census, U.S. Dep't of Commerce, *Profile of General*

of living arrangement, they believe they are giving up the right to privacy in their personal space. Generally, when single, unrelated persons live together in a house, the kitchen, living room, bathroom, hallways and entryways are communal space, but the individual bedrooms remain private. As a social norm, this is fairly well established; thus, many of these individuals probably do not feel the need to clearly delineate their personal space with locks or signs. We find a reasonable expectation of privacy in an individual room rented within a single-family house.

Fleming has demonstrated a legitimate expectation of privacy in his bedroom. The testimony shows Fleming rented a room within Nearman's house for $375 a month. He was not related to Nearman and testified that he had exclusive possession and control of his room. There is no indication he gave Nearman access to his private bedroom. We hold Fleming has demonstrated a reasonable expectation of privacy in his bedroom. Therefore, a warrant was required to enter Fleming's bedroom.

**B. Invasion of Protected Interest.** As previously noted, "the government must obtain a search warrant prior to unreasonably searching, or entering, an area where a person possesses a reasonable expectation of privacy." *Breuer*, 577 N.W.2d at 45. "If a warrant calls for the search of multiple places or persons, probable cause must exist as to each location or person sought to be searched under authority of the warrant." *State v. Jamison*, 482 N.W.2d 409, 412 (Iowa 1992), *abrogated*

---

*Demographic Characteristics for Iowa: 2000* (2001), *available at http://www.census.gov/prod/2002pubs/c2kprof00-ia.pdf*. A recent study also found that 12% of young adults age 18 to 34 have acquired a roommate because of recent economic conditions. Wendy Wang & Rich Morin, Pew Research Center, *Home for the Holidays . . . and Every Other Day* (Nov. 24, 2009), *available at http://pewsocialtrends.org/pubs/748/recession-brings-many-young-adults-back-to-the-nest.*

*on other grounds by State v. Heminover*, 619 N.W.2d 353, 357 (Iowa 2000).

Although the warrant purported to encompass the entire house, because we have determined that Fleming had a reasonable expectation of privacy to his room, any search of his room was required to be supported by an independent showing of probable cause. The State has not asserted that probable cause existed to search Fleming's room. There was no reason to believe that Nearman had access to that room or that he may have hidden drugs there. Further, there was no showing to the magistrate that Fleming was in possession of drugs. In ruling on Fleming's motion to suppress, the district court found Leckband and Lammers had informed police in their post *Miranda* interviews that Nearman had a roommate or roommates and told police they believed there was marijuana in all of the bedrooms in the residence. This information, however, was not contained in the search warrant application.

> [W]e have strictly limited the determination of whether probable cause exists to a consideration of only those facts reduced to writing that were actually presented to the issuing judge at the time the application for the warrant was made. Any additional facts adduced later cannot be considered.

*State v. Gillespie*, 530 N.W.2d 446, 448 (Iowa 1995) (citation omitted). The only person named in the application as having possession of drugs was Nearman. Thus, there was no showing of probable cause to search Fleming's room. Therefore, the search of his room was warrantless.[3]

---

[3]We acknowledge that *State v. Lehr*, 258 N.W.2d 158 (Iowa 1977), presented a situation with somewhat similar facts. In *Lehr*, a search warrant was issued for an apartment unit and all persons on the premises during the search. *Id.* at 159. The defendant did not raise the issue presented here, but only whether the warrant should have been issued for the entire apartment. *Id.* at 159–60. This case is distinguishable

"A warrantless search . . . is per se unreasonable unless it falls within a recognized exception." *Cline*, 617 N.W.2d at 282. "These exceptions include searches based on consent, plain view, [or] exigent circumstances, and searches incident to arrest." *Breuer*, 577 N.W.2d at 45. "The State has the burden to prove by a preponderance of the evidence that the search falls within an exception." *Cline*, 617 N.W.2d at 282. The State, however, does not even argue that there is an applicable exception that would allow the officers' warrantless search of Fleming's bedroom, nor viewing the totality of the circumstances can we find one.[4]

Because we find the officers unreasonably invaded Fleming's protected interest in his bedroom, and therefore violated his right to be free from unreasonable search and seizures under article I, section 8 of the Iowa Constitution,[5] the evidence of marijuana found in his bedroom must be suppressed.[6] *State v. Tague*, 676 N.W.2d 197, 206 (Iowa 2004)

---

as the application alleged that apartment was in the name of Lehr and further that three residents were in possession of drugs.

[4]To the extent probable cause may have supported a further search of Fleming's bedroom, a new search warrant was required. *See Graves*, 708 So. 2d at 861 (requiring a new search warrant for a rented room).

[5]The United States Supreme Court has not addressed this precise issue, and therefore we do not presume to decide the outcome under the Fourth Amendment to the United States Constitution.

[6]We have rejected the good faith exception to the exclusionary rule where there has been an unlawful search.

> Regardless of the good faith of police in relying upon a search warrant approved and issued by a judicial officer, the exclusionary rule remains the best way to protect the integrity of the judicial process and an individual's right under our state constitution to be free from government conduct ultimately determined to be unlawful. Accordingly, even if the search of [the defendant] was conducted by officers within the framework of the good faith doctrine . . . the exclusionary rule nevertheless applies to [his] claim under our state constitution.

*State v. Prior*, 617 N.W.2d 260, 268 (Iowa 2000).

(holding all evidence flowing from an unconstitutional search is inadmissible).

**IV. Disposition.**

We conclude that under our state constitution Fleming had a reasonable expectation of privacy in his bedroom, and the officers violated that interest by searching his bedroom without obtaining a warrant supported by probable cause authorizing a search of that area. As a result, the evidence seized from Fleming during the search must be excluded from trial. The decision of the court of appeals is vacated and the district court judgment reversed. We remand for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**