# IN THE COURT OF APPEALS OF IOWA

No. 15-0098
Filed March 23, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**APRIL DENISE KHURAM,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joseph M. Moothart, District Associate Judge.

April Khuram appeals the district court's denial of her motion to suppress. **AFFIRMED.**

Travis M. Armbrust of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason City, for appellant.

Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

An individual found guilty of possessing marijuana contends officers did not obtain valid consent to conduct a warrantless search of her bedroom and, accordingly, the district court should have suppressed the marijuana evidence.

## I.    *Background Facts and Proceedings*

Waterloo police officers received a complaint of marijuana odors coming from an apartment complex.  The odor appeared to be strongest around a lower-level apartment.  Officers knocked on the door of the apartment.  A man identified as Loren Austin answered, said the lease was in his name, and told the officers a woman was in the back bedroom.  Austin consented to a search of the apartment.  The officers found April Khuram in the bedroom.  They also found marijuana in the bedroom.

The State charged Khuram with possession of marijuana.  Iowa Code § 124.401(5) (2013).  Khuram moved to suppress the evidence gained in the search.  The district court suppressed statements Khuram made but denied the motion with respect to the marijuana evidence.  The court subsequently adjudged Khuram guilty based on the minutes of testimony and imposed sentence.  This appeal followed.

## II.    *Suppression Ruling*

Khuram contends the district court should have suppressed the marijuana evidence on the ground that the search of her "private living space" violated federal and state constitutional proscriptions against unreasonable searches and seizures.  U.S. Const. amend IV; Iowa Const. art. I, § 8.  "Generally, the rights contained in the Fourth Amendment and the Iowa Constitution are 'deemed to be

identical in scope, import, and purpose.'" *State v. Fleming*, 790 N.W.2d 560, 564 (Iowa 2010) (citation omitted). But, the Iowa Supreme Court has reserved its "right to interpret our state constitution in a fashion that provides greater protection." *Id.*

In *Fleming*, the court did just that. *Id.* at 565-67. There, the court was asked to decide "[w]hether an individual enjoys an expectation of privacy in a rented room within a house that is lived in communally." *Id.* at 564. The court answered yes to this question under the Iowa Constitution. *Id.* at 567. The court reasoned as follows:

> Generally, when single, unrelated persons live together in a house, the kitchen, living room, bathroom, hallways and entryways are communal space, but the individual bedrooms remain private. As a social norm, this is fairly well established; thus, many of these individuals probably do not feel the need to clearly delineate their personal space with locks or signs. We find a reasonable expectation of privacy in an individual room rented within a single-family house.

*Id.* After finding Fleming possessed a reasonable expectation of privacy in the bedroom, the court went on to hold that "officers unreasonably invaded Fleming's protected interest in his bedroom." *Id.* at 568. We will apply this two-step approach.

### A. Expectation of Privacy

As in *Fleming*, we begin our analysis with whether Khuram possessed a legitimate expectation of privacy in the bedroom. Khuram testified, and the district court found, she rented a room in an apartment leased by her "good friend" Austin. Although the officers characterized Khuram as Austin's girlfriend, both Austin and Khuram denied being involved in a relationship at the time of the

search. The district court found they "were not romantically involved." We defer to this finding given the district court's ability to assess witness credibility. *Id.* at 563.

The district court also found the bedroom Khuram rented had a lock on the door, a finding supported by the testimony of both Khuram and Austin. But Khuram did not always use the lock. And Austin could enter the bedroom whether it was locked or unlocked because he had a key. However, he generally did not enter unless he had Khuram's permission. According to Khuram, she granted Austin permission to check on her at night because she was diabetic and, on one occasion, gave him permission to retrieve her personal belongings when she was hospitalized.

Khuram additionally testified only her belongings were in the room. While Austin contradicted this testimony, his statements were fraught with inconsistencies. Applying a totality-of-the-circumstances standard of review, we conclude Khuram possessed a legitimate expectation of privacy in her bedroom under the Iowa Constitution. *See id.* at 567 (finding legitimate expectation of privacy based on rental of room in a house, absence of family relationship between homeowner and tenant, and "exclusive possession and control" of room).

### B.    *Invasion of Protected Interest*

Having concluded Khuram enjoyed a legitimate expectation of privacy in the bedroom, we must next decide "whether the State has unreasonably invaded th[is] protected interest." *Id.* at 564. "A warrantless search . . . is per se unreasonable unless it falls within a recognized exception." *State v. Carter*, 696

N.W.2d 31, 37 (Iowa 2005).  One recognized exception is consent.  *State v. Baldon*, 829 N.W.2d 785, 791 (Iowa 2013).

The question here is whether Austin had authority to consent to the search of Khuram's bedroom.  Authority to consent may be actual or apparent.  *State v. Lowe*, 812 N.W.2d 554, 576 (Iowa 2012).  "Apparent authority will validate a search where officials 'enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry' had the authority to do so."  *Id.* (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990)).  "We apply an objective standard when analyzing consent and ask 'would the facts available to the officer at the moment . . . warrant a [person] of reasonable caution in the belief that the consenting party had authority over the premises?'"  *Id.* (quoting *Rodriguez*, 497 U.S. at 188); *see also State v. Grant*, 614 N.W.2d 848, 853 (Iowa Ct. App. 2000) ("A consent search of a home is only proper if the police reasonably believed the person granting the police permission to search had the authority to do so.").

Assuming without deciding that Austin lacked actual authority to consent to the search of Khuram's bedroom, the record establishes his apparent authority to consent.  According to one of the officers, Austin told him "his girlfriend April was in the back bedroom."  While the officer later equivocated on whether Austin used the term "girlfriend," he insisted he was "led to believe that they were dating."  A second officer confirmed Austin's statement that "another person was" in the apartment.  This officer also understood the person to be Austin's "girlfriend."  In short, both officers at the scene reasonably believed Austin was in

a relationship with Khuram and had authority to consent to a search of her bedroom.

We recognize the officers' belief was undermined by subsequent testimony from Austin and Khuram. As noted, both denied a relationship and the district court credited their testimony over the officers' testimony on this point. But the officers' "erroneous" belief about the nature of the couple's relationship was not necessarily an unreasonable one. *Lowe*, 812 N.W.2d at 576. That is because the surrounding circumstances did not "raise reasonable doubts as to the authority of the consenting party." *Grant*, 614 N.W.2d at 854.

As discussed, the officers went to the apartment building based on a complaint of marijuana odor, traced the smell to Austin's apartment, knocked on the apartment door, and asked the person who answered whether he was the leaseholder and whether anyone else was in the apartment. They obtained confirmation Austin was the leaseholder and someone they understood to be his girlfriend was in the apartment. They proceeded into the apartment and to the back bedroom with Austin's unambiguous and unrestricted consent. Although Austin testified the door to Khuram's bedroom was locked, he acknowledged he was unable to see the door from his vantage point in the living room and Khuram stated she many not have locked the door on the night of the search. *See State v. Belieu*, No. 15-0134, 2015 WL 6508487, at *3 (Iowa Ct. App. Oct. 28, 2015) (noting "the door to the bedroom was unlocked and standing open at the time the sergeant entered"). Under these circumstances, the officers had no reason to call Austin's authority to consent into question. Given the absence of ambiguity,

they did not have an "obligation to make further inquiries into the precise nature of the situation." *Grant*, 614 N.W.2d at 854.

Applying the consent exception to the warrant requirement and, specifically, the apparent authority prong of the consent exception, we conclude the officers' warrantless entry into the apartment and the subsequent search of Khuram's bedroom did not unreasonably invade Khuram's legitimate expectation of privacy in the bedroom. Accordingly, we affirm the district court's well-reasoned order denying Khuram's motion to suppress and her conviction and sentence for possession of marijuana.

**AFFIRMED.**