# IN THE COURT OF APPEALS OF IOWA

No. 18-0140
Filed April 3, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BOBBI LEE BARDEN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Boone County, Paul G. Crawford, District Associate Judge.

Bobbi Barden appeals her conviction for possession of methamphetamine, first offense. **AFFIRMED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., and Vaitheswaran and Mullins, JJ.

**VAITHESWARAN, Judge.**

A Madrid police officer responded to a "domestic situation" at a home occupied by Bobbi Barden, her mother, and several children. The officer spoke to Barden and her mother outside the home. After Barden went inside, the officer engaged in a more exhaustive conversation with her mother, then entered the home with the mother's consent.

Once inside, the officer asked Barden for consent to enter her bedroom. Barden initially refused. She later equivocated on the search of her room but agreed to a search of her purse. The officer found methamphetamine inside the purse.

The State charged Barden with possession of methamphetamine, first offense, in violation of Iowa Code section 124.401(5) (2017). Barden moved to suppress the evidence gained in the search of her purse.[1] Following a hearing, the district court denied that aspect of the suppression motion. The court tried Barden on the minutes of testimony, found her guilty as charged, and imposed judgment and sentence.

On appeal, Barden contends the warrantless search of her purse violated constitutional prohibitions against unreasonable searches and seizures. *See State v. Fleming*, 790 N.W.2d 560, 563 (Iowa 2010) (enumerating rights). Specifically, she argues her "consent to the search was given involuntarily." *See State v. Reinier*, 628 N.W.2d 460, 465 (Iowa 2001) ("A warrantless search conducted by

---

[1] Barden also challenged other aspects of the search, including a search of her room, which the district court found was nonconsensual. Those aspects are not issues on appeal.

free and voluntary consent does not violate the Fourth Amendment."); *see also State v. Pettijohn*, 899 N.W.2d 1, 25 (Iowa 2017) ("[E]ffective consent to a warrantless search establishes a waiver of an individual's right to be free from unreasonable searches and seizures under article I, section 8.").

The Iowa Supreme Court has applied the federal standard for effective consent: "whether the consent was voluntarily given and not a result of duress or coercion, expressed or implied." *See State v. Pals*, 805 N.W.2d 767, 777 (Iowa 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 247–48 (1973)). Under that standard, "[v]oluntariness is a question of fact to be determined by all the circumstances." *Id.* The court has "yet to consider whether a knowing and intelligent waiver of the right to be free from warrantless searches and seizures set forth in article I, section 8 is required to establish the effectiveness of consent under the Iowa Constitution." *Pettijohn*, 899 N.W.2d at 32 (citations omitted). In the absence of guidance on that question, we decline Barden's invitation to adopt the more stringent test.

In evaluating the voluntariness of Barden's consent under the federal standard, we may consider the following non-exclusive factors:

> personal characteristics of the defendant, such as age, education, intelligence, sobriety, and experience with the law; and features of the context in which the consent was given, such as the length of detention or questioning, the substance of any discussion between the defendant and police preceding the consent, whether the defendant was free to leave or was subject to restraint, and whether the defendant's contemporaneous reaction to the search was consistent with consent.

*Pettijohn*, 899 N.W.2d at 32 (citing *United States v. Jones*, 254 F.3d 692, 696 (8th Cir. 2001). Our review of the record is de novo. *See State v. Smith*, 919 N.W.2d 1, 4 (Iowa 2018).

According to the officer, Barden was a known drug user. He testified that, when she came out of the home, she "seemed very agitated," was "[t]alking very fast," and had "trouble standing still while she was talking." The officer's body camera corroborates this characterization. Although Barden told the officer she had not used methamphetamine that day and her last usage was two months earlier, the officer noted she was "going a mile a minute."

After Barden re-entered the home, the officer confirmed with the mother that Barden had her own bedroom. He discussed Barden's drug usage and the likely presence of drugs in her bedroom. As noted, he obtained the mother's consent to enter the home. However, he told the mother he would be unable to search Barden's bedroom if Barden declined consent.

Once inside, and after an extended conversation with Barden about her drug use, the officer asked Barden if he could come into her room. She said he could not without a warrant. The following exchange was captured on the body camera:

> OFFICER: So I can come take a look then?
> BARDEN: No, I don't want you in my room without a frickin' thing. How about that?
> OFFICER: Without a frickin' what?
> BARDEN: Without a warrant. You got a warrant, come search. Do you got a warrant to come search my room?
> OFFICER: Do you want me to go get one?
> BARDEN: Yes, please.
> OFFICER: You want me to displace your kids for several hours, go write a search warrant?

> BARDEN: You know what? That's fine, because there's nothing in here.
> OFFICER: So if there's nothing in there, you don't mind if I come take a quick look then, right?
> BARDEN: No, there's nothing in here. You want to search my purse, too? Here, search my purse. Here go on.
> OFFICER: So I can come in and search your purse?
> BARDEN: Search my purse. Everything. Here you go. Everything.

Barden handed the officer her purse and walked into the hallway. The officer took the purse into the kitchen and searched it, discovering the methamphetamine.

Barden essentially concedes she consented to the search of her purse. She argues the consent was involuntary given the officer's "threat to displace her children for some time." In her view, the statement was "disingenuous" because "[h]e did not explain to her the real process he would need to undertake to search her home" and "his statement would more readily be interpreted to mean that the children would be removed from Barden's care and turned over to authorities."

We are unpersuaded by Barden's argument. The recorded statements of Barden's mother suggest the children were formally removed from Barden's custody and placed with her mother, notwithstanding Barden's informal interaction with them in the home. Accordingly, Barden had reason to know how the child-removal process worked. More saliently, the officer did not intimate, let alone assert, that the children would be taken away if she failed to cooperate with the search. He simply stated the children would be displaced "for several hours" while he went to "write a search warrant," a separation that would, at most, be transitory. *See State v. Holland*, 389 N.W.2d 375, 377, 381 (Iowa 1986) (concluding officers' assertions "that the Department of Human Services would be called to take charge

of the children left in the apartment" on defendant's arrest "were not improper or in any way inaccurate").

Nor are we persuaded by Barden's argument that she lacked time to deliberate on the request for consent, rendering her request for consent "coercive." Barden had sufficient time to articulate her desire for a warrant to search her room. Her knowledge of the right to refuse consent and insist on a warrant belies her assertion that she was pressured into allowing a search of her purse.

Barden's knowledge of her right to refuse consent also dilutes her contention that the officer should have advised her she could refuse consent. *See State v. Lowe*, 812 N.W.2d 554, 573 (Iowa 2012) (noting defendant "clearly knew she had the right to refuse consent to search because at all times she refused to consent to a search of her entire mobile home"); *see also State v. Prusha*, 874 N.W.2d 627, 630 (Iowa 2016) ("Under *Schneckloth*, [412 U.S. at 224,] knowledge of the right to refuse 'is not a prerequisite to establishing . . . voluntary consent . . . .'" (citation omitted)). Notably, Barden did not simply acquiesce in the search; she entered her room, took her purse and handed it to the officer. *See State v. Leaton*, 836 N.W.2d 673, 677 (Iowa Ct. App. 2013) ("Consent given to a search must be unequivocal, specific, and freely and intelligently given." (citation omitted)). In other words, her "contemporaneous reaction to the search was consistent with consent." *Pettijohn*, 899 N.W.2d at 32.

There is also scant indication Barden "was cornered in the back of her residence" and had no freedom to walk away from the encounter. She was unrestrained throughout, and, while the hall to her bedroom was narrow, there is no indication the officer impeded her movement. *Cf. Pals*, 805 N.W.2d at 782

(stating a "pat-down search . . . projected authority over [the defendant] and [was] a factor to be considered in determining the voluntariness of the search" and the defendant "was detained in [a] police vehicle at the time of the consent to search").

Finally, Barden suggests the officer coerced her into consenting to the search by "stating he could get a search warrant, knowing there was no reasonable articulable suspicion to establish probable cause." In fact, the officer referred to "writ[ing] a search warrant," which we construe to mean preparation of a search warrant application. The officer did not state he could obtain a warrant. His earlier statement to Barden's mother that he would not search Barden's bedroom without her consent bolsters our belief that the officer's statement about writing a warrant was an articulation of the next step rather than a misrepresentation of his ability to obtain a search warrant. *See Lowe*, 812 N.W.2d at 574 (noting "[t]he police never claimed they could search without [the woman's] consent").

On our de novo review of the record, we agree with the district court that Barden's consent to the search of her purse was voluntary. *See State v. Ahmetovic*, No. 17-0913, 2018 WL 3655086, at *4 (Iowa Ct. App. Aug. 1, 2018) ("[I]t is clear that the police did not assert any claim of authority to search, engage in a show of force or other types of coercive action, threaten or attempt to deceive, or engage in other illegal police action prior to the giving of consent."). We affirm Barden's judgment, conviction, and sentence for possession of methamphetamine, first offense.

**AFFIRMED.**