# IN THE COURT OF APPEALS OF IOWA

No. 20-1360
Filed January 12, 2022


**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**MICHELLE KATHERINE STOCKMAN,**
     Defendant-Appellant.
_____


     Appeal from the Iowa District Court for Howard County, Alan T. Heavens,

Judge.


     The defendant appeals the denial of her motion to suppress. **AFFIRMED.**



     Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau,

Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.



     Considered by Greer, P.J., Badding, J., and Blane, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**BLANE, Senior Judge.**

Michelle Stockman appeals the denial of her motion to suppress evidence seized in three separate searches—one of her purse, one of her vehicle, and one of her person when booked into jail following her arrest. The two initial searches were during execution of a federal search warrant obtained by federal agents from a federal magistrate judge and resulted in paraphernalia and methamphetamine being found by state law enforcement officers who were assisting. Upon our review, since the search warrant was issued by a federal court, we apply a Fourth Amendment and federal law analysis. We uphold the search and denial of Stockman's motion to suppress evidence.

## I. Background facts and proceedings.

In early 2019, Stockman and Christopher Weigert were in a troubled relationship. In February, she obtained a no-contact order against him. Stockman also went to the Cresco police and provided information that Weigert, a convicted felon, had guns and that he supplied methamphetamine that they used at his residence as well as her's. Later that same month, a confidential informant contacted the Cresco police and advised Weigert had solicited him to either kill Stockman or find a hit man to do so. Weigert wished Stockman dead because he had been charged with methamphetamine crimes and blamed her. In his statement to police, the confidential informant advised he smoked methamphetamine with Weigert and saw Weigert in possession of firearms. Based on the nature of this information, Cresco police referred the matter to the Federal Bureau of Investigation (FBI).

An FBI agent used this information in a search warrant application to seek evidence of this pay-for-murder plan and other specific crimes.[1] The agent referred in the application to the confidential informant and an "ex-girlfriend," but not to Stockman by name. On March 18, 2019, a United States magistrate judge issued the federal search warrant, which authorized the FBI to search: "The residence and *any person, vehicles*, and outbuildings *located at [the address], Cresco, Iowa,* or the curtilage thereof . . . the person of Christopher Weigert, including a sample of his urine for further testing; and a 2005 Chevrolet 2500 pickup truck . . . ." (Emphasis added). And an attachment to the warrant stated there was probable cause to search and seize: "Any and all paraphernalia, instrumentalities, packaging, packing materials, substances, chemicals, controlled substances, or records which are evidence of illicit possession, acquisition, use, manufacture, distribution, or dispensing of controlled substances." Cresco police officers did not assist in the preparation or presentation of the warrant application to the federal magistrate judge.

On March 20, federal agents assisted by Cresco police executed the search warrant at Weigert's residence. Weigert and Stockman were found together

---

[1] The search warrant application alleged violations of:

18 U.S.C. § 922(g)(1) Felon in Possession of a Firearm or Ammunition

18 U.S.C. § 922(g)(3) Drug User in Possession of a Firearm or Ammunition

18 U.S.C. § 922(g)(3) [sic] Domestic Abuser in Possession of a Firearm or Ammunition

18 U.S.C. § 1958 Using a Facility in Interstate Commerce with Intent that a Murder be Committed

sleeping in bed in the master bedroom.[2]  Weigert's school-aged daughter was also in the house.  Federal agents found drugs in the master bedroom and the garage.  Stockman's purse was also located in the master bedroom.[3]  State officers were initially serving as perimeter security, but at FBI direction they assisted in searching Stockman's purse and her vehicle located in the residence driveway.

The Cresco police officer who assisted in the search testified at the suppression hearing that he believed he had authority to search Stockman's purse and vehicle because the search warrant authorized the search of "any person" or "vehicle" located at Weigert's residence, even though Stockman's name did not appear in either the search warrant or the application.  The officer was aware that the "ex-girlfriend" referred to in the search warrant application was Stockman.[4]  Stockman testified at the suppression hearing, but only as to the age of Weigert's daughter being eight or nine years and that she did not have or carry a purse.  Stockman was not asked if the purse that was searched belonged to her.  The State conceded there was no basis to believe the purse belonged to Christopher Weigert.

During the searches, the officers found drug paraphernalia and a package of methamphetamine in Stockman's purse and additional drug paraphernalia in

---

[2] Based on the information in the search warrant application concerning Weigert's threats against Stockman and that she obtained a no contact order against him, agents were surprised that she was present in his residence.  There is no claim this was Stockman's residence.

[3] The complaint and affidavit filed in Howard County district court stated: "Michelle's purse was located inside the master bedroom."

[4] This officer earlier interviewed Stockman when she provided information to police about Weigert's weapons possession, Weigert's drug usage, and her own use of methamphetamine with Weigert at his residence.

her vehicle. Stockman was arrested and taken to the Howard County jail.[5] During her booking into jail, a search of her person uncovered a baggie of methamphetamine in her left boot. Federal authorities referred the matter to the Howard County Attorney for state prosecution.

On April 8, the county attorney filed a trial information against Stockman charging her with two counts of possession of a controlled substance (methamphetamine) as a first offense based on the drugs found in her purse and in her boot. Stockman filed a motion to suppress the evidence obtained during the searches.

Stockman's motion to suppress challenged the searches of her purse and vehicle because she was not the person named in the search warrant. She argued she had a legitimate and reasonable expectation of privacy in her purse and vehicle. She further argued that the evidence found during the search of her person at the time of booking into jail should also be suppressed as fruit of the poisonous tree since her arrest was based on illegal searches that exceeded the search warrant. The motion contended a violation of her constitutional rights under both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. In her motion, Stockman did not address that the search warrant had been issued by a federal court, primarily executed by federal agents, or if the Iowa Supreme Court decision in *State v. Ramirez*, 895 N.W.2d 884 (Iowa 2017), was applicable.

---

[5] The complaint only alleged the methamphetamine possession charges, not possession of paraphernalia.

The State resisted Stockman's motion, arguing search warrants authorizing the search of "all persons" are not per se unreasonable but the requirements of such a warrant are stringent, citing *State v. Prior*, 617 N.W.2d 260 (Iowa 2000), and *State v. Thomas*, 540 N.W.2d 658 (Iowa 1995). Next, the State argued that Stockman did not establish her expectation of privacy as required under *State v. Lowe*, 812 N.W.2d 554, 557 (Iowa 2012). Finally, it argued the Iowa district court did not have the authority to invalidate a search warrant issued by a federal court, citing *Ramirez*, 895 N.W.2d 884.[6]

Following a hearing, the district court framed the issue as whether Stockman had "an expectation of privacy for a vehicle and purse found at a residence that she said that she uses illegal drugs at." The court's analysis was whether Stockman's position was similar to the Iowa Supreme Court's opinions in *State v. Fleming*, 790 N.W.2d 560 (Iowa 2010),[7] or *State v. Brown*, 905 N.W.2d 846 (Iowa 2018). The court then found that neither of these cases controlled as they were distinguishable on their facts because the application for the search warrant in the present case contained statements Stockman made to law enforcement that she used methamphetamine with Weigert at his residence. Specifically, the court found:

> Also included was information from the ex-girlfriend that she had previously used methamphetamine with Weigert and that they last

---

[6] We note the State's brief in support of its resistance to Stockman's motion asserted that Stockman's vehicle, a red 2005 Pontiac Grand Prix, was listed in the search warrant. If this were true, then the search of Stockman's vehicle would have been pursuant to the warrant and valid. But on our review of the record, the search warrant only authorized search of a 2005 Chevrolet pickup truck belonging to Weigert, not Stockman's vehicle.

[7] The district court did not provide a cite to this case, but based upon our review of the record we believe this to be the case the district court referenced.

> used methamphetamine together in late January 2019. . . . Michelle Stockman also told law enforcement that Weigert always supplied the drugs when they used together and "they would use drugs at Weigert's house as well as the ex-girlfriend's (Stockman's)."

Finding Stockman's statements to law enforcement included in the warrant application negated her expectation of privacy, the court denied her motion to suppress. The court did not address the State's contention regarding the federal warrant and *Ramirez*.

Stockman then waived a jury trial and stipulated to a bench trial on the minutes of evidence. The district court found Stockman guilty, sentenced her to forty days in jail with all but four days suspended, and assessed fines of $315 on each count with surcharge. She was placed on informal probation for one year and ordered to obtain a substance-abuse evaluation. Stockman timely appealed.

## II.  Standard of review.

As Stockman raises a constitutional challenge, we apply de novo review. *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019). "We examine the entire record and 'make an independent evaluation of the totality of the circumstances.'" *Id.* (citation omitted). "In doing so, we evaluate each case 'in light of its unique circumstances.'" *Id.* (quoting *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012)). "An individual challenging the legality of a search has the burden of showing a legitimate expectation of privacy in the area searched." *Fleming*, 790 N.W.2d at 564. "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001) (footnote omitted). In conducting our review, we observe that the burden is on the defendant who

challenges a search conducted pursuant to a validly issued warrant. *See Brown*, 905 N.W.2d at 858 (Waterman, J., dissenting).

### III.    Discussion.

On appeal the State again urges that our state court has no authority to invalidate a search warrant issued by a federal court, citing *Ramirez*. 895 N.W.2d at 894. In *Ramirez*, our supreme court held that an anticipatory search warrant, which is permitted under federal law but not under Iowa law, was valid when issued by a federal court at the request of federal agents who were primarily involved in its execution, even though Ramirez was charged in State court. *Id.*; *see also State v. Gillespie*, 530 N.W.2d 446, 449 (Iowa 1995) (holding Iowa Code sections 808.3 and .4 (1991), governing applications for search warrants, do not permit anticipatory search warrants). We find *Ramirez* helpful, but it does not totally resolve the issues here. Stockman claims the federal search warrant was invalid as well as the searches of her purse and vehicle unconstitutionally exceeded the scope of the warrant.[8] We need only consider whether the searches exceed the warrant.

In *Ramirez*, the supreme court identified the issue: "Should Iowa invalidate a search that would not have been invalidated under the law of the jurisdiction pursuant to which it was conducted?" 895 N.W.2d at 895. The court answered in

---

[8] At page 20 of her appeal brief, Stockman for the first time argues that the federal search warrant should not have been issued because the application was deficient in that the information about drug usage was "stale" and consisted of only one paragraph out of 20 pages. The State points out that this argument was not raised before the district court and cannot be considered on appeal. We agree. *State v. Sykes*, 412 N.W.2d 578, 581 (Iowa 1987) (an attack on the warrant itself not preserved need not be considered on appeal).

the negative. The search in this case, as in *Ramirez*, was conducted by federal agents pursuant to a search warrant obtained by those agents from a federal magistrate judge. Stockman based her motion to suppress on both the Fourth Amendment to the federal constitution and Iowa Constitution, article 1, section 8. The district court did not apply federal law in deciding Stockman's motion.

We recognize that in *Ramirez*, the court noted that "[w]hile Iowa law would not have authorized the type of warrant issued, no argument is raised that the search—if statutorily authorized—would have violated the Iowa Constitution." Here, Stockman *does* argue the search in this case violated the Iowa Constitution under *Brown*. *See* 905 N.W.2d at 852. But we do not believe this changes our analysis. This is because after favorably discussing and relying upon extra-jurisdictional authorities that sanctioned the admission of evidence even where the search would have violated the state constitution if conducted by state officials, the *Ramirez* court stated:

> When a bona fide federal investigation leads to a valid federal search, but the evidence is later turned over to state authorities for a state prosecution, we do not believe deterrence or judicial integrity necessarily require a reexamination of the search under standards that hypothetically would have prevailed if the search had been performed by state authorities.

895 N.W.2d at 895–98 (citing *State v. Mollica*, 554 A.2d 1315, 1328 (N.J. 1989)) *see also Mollica*, 554 A.2d at 1328 (endorsing the principle that "federal officers acting lawfully and in conformity to federal authority are unconstrained by the State Constitution, and may turn over to state law enforcement officers incriminating evidence, the seizure of which would have violated state constitutional standards").

In *Ramirez*, the supreme court also cited favorably to its earlier opinion in *State v. Davis*, 679 N.W.2d 651 (Iowa 2004):

> In that case, the defendant who lived on the Missouri side of the Iowa–Missouri border was suspected of committing acts of vandalism in Wayne County on the Iowa side. The Wayne County sheriff met with a Missouri prosecutor who prepared two successive warrant applications. The sheriff presented both applications to a Missouri judge who then issued the warrants. Both Missouri and Iowa law enforcement participated in the ensuing searches, which netted evidence of the defendant's involvement in vandalism.
>
> Later, the Wayne County District Court granted the defendant's motion to suppress. It concluded the results of the searches could not be used in an Iowa case because the searches did not comply with law of the jurisdiction where they were performed. In particular, Missouri law did not permit warrant applications to be verified by an out-of-state law enforcement official and, although they could be verified by the local prosecutor, in this instance the prosecutor was not under oath when he signed them. The court further reasoned that Iowa does not recognize a good-faith exception to the exclusionary rule for warrants subsequently determined to be defective.
>
> On the State's appeal, we reversed. We pointed out that while Iowa had rejected the good-faith exception to the exclusionary rule, Missouri had adopted it. Thus, a Missouri court would have allowed the evidence from the two searches to be used if the case had been pending in Missouri. We concluded,
>
>> We see no reason to give greater protection to the integrity of the Missouri statutes than the Missouri courts do under similar circumstances. For these reasons, we believe that the good faith exception as recognized by the Missouri courts applies to the Missouri searches, and the district court should have overruled defendant's motion to suppress.

*Ramirez*, 895 N.W.2d at 894 (citations omitted). Following *Ramirez* and *Davis*, we apply federal law to determine under the facts and circumstances of this case whether Stockman had an expectation of privacy and whether the search of her purse was authorized under the federal search warrant.

In this case, we specifically look at whether the provision in the search warrant authorizing the search of "the residence and *any person, vehicles*, and

outbuildings *located at [the address], Cresco, Iowa*, or the curtilage thereof" extended the scope of the warrant so as to allow search of Stockman's purse under federal law.[9] (Emphasis added.) In other words, we must determine if information contained in the application for search warrant about methamphetamine use at the residence by Weigert and the "ex-girlfriend," who was known by officers to refer to Stockman, provided a probable cause nexus under the warrant to allow search of her purse or vehicle.

### i.     Expectation of privacy.

The district court found Stockman did not have a legitimate and reasonable expectation of privacy as to the search of her purse. The court quoted from *Brown*: "[T]he rule is clear—if a third party is not named in a warrant, that party continues to have expectations of privacy when a search warrant is executed on a residence in which they are present." (Citation omitted.) It is clear under the Iowa constitution that search of a visitor's purse who is not named in the search warrant is unlawful.

> In this case, we are called upon to determine whether law enforcement officers executing a search warrant may search a purse belonging to a visitor who is present at the premises to be searched but who is not named in the warrant. Under the facts and circumstances of this case, we conclude that the search of the purse belonging to the visitor was unlawful under article I, section 8 of the Iowa Constitution.

*Brown*, 905 N.W.2d at 847. But the district court found Stockman's statements to Cresco police, which were included in the search warrant application, that she

---

[9] This is referred to as an "all person" or "any person" extension.

used methamphetamine with Weigert at his residence, negated her expectation of privacy and distinguished it from *Brown*.[10]

We find the district court's holding that Stockman's statements defeated her expectation of privacy is not consistent with Iowa or federal law. Under *Brown*, Stockman maintained an expectation of privacy in her purse; that expectation may be overcome by a search pursuant to a valid warrant.

Since we are evaluating a search pursuant to a federal warrant, we also look at whether Stockman had an expectation of privacy under federal law. Showing a reasonable expectation of privacy requires that the person first "exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Roskens v. Graham*, 435 F. Supp. 3d 955, 974 (N.D. Iowa 2020) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *see Rakas v. Illinois*, 439 U.S. 128, 148–49 (1978) (discussing legitimate expectation of privacy); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 337–38 (1985) (finding the Fourth Amendment affords a reasonable expectation of privacy in a purse). Stockman had a legitimate and reasonable expectation of privacy of her purse under the

---

[10] In *Brown* there was considerable discussion regarding whether Brown possessed the purse and had an expectation of privacy. *See* 905 N.W.2d 851–52. At the suppression hearing in this case, the focus of the testimony was whether the purse belonged to Stockman, where it was found, and whether it could have belonged to Weigert's daughter who was also in the home. We see no need to venture down this side road. Under the facts here, there is no question the officers understood the purse being searched belonged to Stockman.

Also, although the warrant application only referred to Weigert's "ex-girlfriend" and did not name Stockman, the record supports that the officers at the residence assisting in executing the search warrant knew this reference was to Stockman.

Fourth Amendment. We proceed to determine if the search warrant authorized search of her purse.

### ii. Applying Fourth Amendment to search.

Under *Ramirez* we are obligated to determine if the search of Stockman's purse was permitted by federal law applicable to a federal search warrant. In other words, did the language in the search warrant authorizing search of "*any person [and] vehicles* . . . located at [the address], Cresco, Iowa" pass federal constitutional muster? (Emphasis added.)

We find this question answered by a recently decided case from the Eighth Circuit Court of Appeals. *See United States v. Simmermaker*, 998 F.3d 1008, 1009 (8th Cir. 2021). Although that case did not address an "any person" search warrant, it is sufficiently similar on its facts to base our resolution of this appeal. In *Simmermaker*, federal agents obtained a federal search warrant for house of W.S., frequented by known drug users. *Id.* The warrant authorized search of items related to drug trafficking and "locked containers, safes, hidden compartments or other items or areas capable of storing or concealing any of the other items listed herein." *Id.* When the warrant was executed, Simmermaker was found asleep on the living room couch. *Id.* Close by her, agents found a meth pipe and a locked Brink's security lockbox. *Id.* She had been staying at the house for two days. *Id.* The agents opened and searched the Brink's box and found over ten grams of methamphetamine and a scale. *Id.* The circuit court wrote:

> "While possession of a warrant generally justifies searching the effects of those occupying the premises, special Fourth Amendment concerns arise when the persons on the premises are visitors." We evaluate "the relationship between the visitor and the place, and whether that relationship is such that it is reasonable for

the searchers to believe that the warrant overcomes the visitor's independent Fourth Amendment privacy rights." It is undisputed that, at the very least, Simmermaker was more than a mere visitor or passerby.

So, was Simmermaker's lockbox within the scope of the warrant? A visitor's privacy interest is complicated when the visitor is connected to the illegal activity at the location that creates the basis for the search warrant.

. . . .

Here, the search warrant was for evidence of drug use and distribution. Officers saw Simmermaker on the couch, asleep, with a meth pipe next to her. "[K]nown drug users" were in and out of the house often. This was enough to give officers "particularized suspicion" that Simmermaker was connected to the illicit activity that provided the basis for the warrant. It follows that her personal belongings—including the Brink's box—would be subject to the warrant, especially because the warrant included all "locked containers." While Simmermaker had a reasonable expectation of privacy in the Brink's box, officers had probable cause that she was involved in the criminal activity that formed the basis for the warrant. Simmermaker's Brink's box fell within the scope of the warrant and searching it was lawful.

*Id.* at 1009–10 (second alteration in original) (citations omitted).

We find the *Simmermaker* case sufficiently similar in its facts and circumstances to control the outcome of this appeal. Like Simmermaker, Stockman was no mere visitor or passerby. She had a prior relationship with Weigert and his residence, which included use of methamphetamine. As indicated, a visitor's privacy interest is complicated when it is connected to the illegal activity at the location that creates the basis for the search warrant. Here, Stockman's admission that she used methamphetamine with Weigert at this residence was included in the application for the search warrant. Just as in *Simmermaker*, Stockman was connected to the illicit activity that provided the basis for the warrant. The Eighth Circuit found that this "particularized suspicion"

constituted the probable cause nexus and authorized the federal agents to search the locked Brink's box pursuant to the search warrant.

Stockman's argument that she was not named in the search warrant is also answered in *Simmermaker*. Simmermaker was not personally named in the warrant under which the lock box was searched. *See id*. Upon our de novo review, we find, applying *Simmermaker*, officers were authorized to search Stockman's purse found in the master bedroom where she was located when the search commenced. Such search was lawful under the Fourth Amendment. Stockman's motion to suppress was properly denied.

We find no need to address Stockman's appeal as to the search of her vehicle. The warrant encompassed vehicles found at the residence. In any case, only paraphernalia was found in the vehicle, and Stockman was not charged with a crime arising from any evidence recovered in that search. As to Stockman's appeal of the denial of her motion to suppress the methamphetamine found in her boot during the search at the jail, since we have found the search of her purse was lawful, her arrest was lawful, so the search at the jail was not "fruit of the poisonous tree" and the motion was properly denied in this regard.[11]

## IV.    CONCLUSION.

Applying a Fourth Amendment analysis to the search warrant issued by a federal magistrate judge and primarily executed by federal agents, under the facts

---

[11] *State v. Entsminger*, 160 N.W.2d 480, 484 (Iowa 1968) (search of person during booking procedure into jail not unreasonable; evidence is admissible)

and circumstances of this case, the search of Stockman's purse and of her person at jail were lawful and her motion to suppress was properly denied.

**AFFIRMED.**